## KRAUSS ET AL. *v.* STATE

[No. 192, September Term, 1957.]

*Decided April 25, 1958.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and MACGILL, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*C. Edward Hartman, II,* with whom were *Fell & Hartman* on the brief, for the appellants.

*E. Clinton Bamberger, Jr., Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *C. Osborne Duvall, State's Attorney for Anne Arundel County,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellants, William Krauss and Edwin Schmidt, along with William Kramer, were charged upon warrant with "unlawfully trespass upon the property of said Edward Huntzberry", 1125 Ritchie Highway, in Anne Arundel County. Kramer was tried before Trial Magistrate Pitcher, in Anne Arundel County, and acquitted. The appellants were tried before Trial Magistrate DeAlba and convicted. They appealed to the Circuit Court for Anne Arundel County, and were there tried, convicted and each fined $10.00 and costs. We granted *certiorari.*

The appellants and Kramer were employed by Eastern Acceptance Corporation to repossess a 1950 Oldsmobile automobile to which it held title under a recorded conditional contract of sale assigned to it by the vendor on December 14, 1956. This contract was in default, and it provided that in such event the "Seller may without notice lawfully enter any premises where the car may be found, take possession of it and custody of anything found in it". See also Code (1957), Art. 83, sec. 141. The contract further provided that the buyer would not "encumber" the car. On the morning of June 18, 1957, Schmidt located and identified the automobile standing on an open lot behind a filling station owned by Huntzberry. Schmidt testified that Huntzberry told him on the telephone that he claimed a garageman's lien on the car for storage and towing. Huntzberry denied talking to Schmidt, but said he learned of the visit from his son. Schmidt returned to the station about 1 A. M. on the following morning accompanied by Krauss and Kramer. A policeman saw their car standing on the lot, and investigated. They told him they were checking the serial number of the car.

There was no testimony that they had attempted to move the car at the time the policeman arrived on the scene. Schmidt admitted that they intended to repossess it. "If it would run we probably would have driven it." They had not attempted to start it. The policeman 'phoned Huntzberry, who had closed the filling station at midnight. Huntzberry came back and subsequently swore out the warrant. He admitted that there were not any "no trespassing" signs posted on the premises.

The State concedes that the appellants were charged under Code (1951), Art. 27, sec. 26, (Code (1957), Art. 27, sec. 577), and not under sec. 300 (Code (1957), Art. 27, sec. 576), relating to posted property. Sec. 26 reads in part as follows: "Any person or persons who shall enter upon or cross over the land, premises or private property of any person or persons in this State after having been duly notified by the owner or his agent not to do so shall be deemed guilty of a misdemeanor, * * * and, provided, further, that nothing in this section shall be construed to include within its provisions the entry upon or crossing over any land when such entry or crossing is done under a *bona fide* claim of right or ownership of said land, it being the intention of this section only to prohibit any wanton trespass upon the private land of others."

The State concedes that at common law a trespass to private property is not a crime unless it is accompanied by, or tends to create, a breach of the peace, although the owner may have a civil action for trespass. *Clark and Marshall, Crimes* (5th Ed.), sec. 424; *Hochheimer, Law of Crimes and Criminal Procedure* (2d Ed.), sec. 327-329. It is argued, however, that there was legally sufficient evidence from which the trial judge could have found that they were notified by the owner not to enter. We think no such inference can be drawn from the testimony. Certainly there was no testimony of an express statement to that effect by Huntzberry. The owner did not tell Schmidt not to enter on his premises, he only told him that he claimed a lien on the car, if we accept Schmidt's version. That claim could hardly be supported. Code (1957), Art. 63, sec. 41, which creates or recognizes a lien for stor-

age and repairs, expressly makes such lien subordinate to the rights of the holder of a conditional sales contract, duly recorded prior to the performance of the services for which a lien is claimed. *Goldenberg v. Finance & Credit Co.*, 150 Md. 298. In *Credit Co. v. Marks*, 164 Md. 130, and *Balto. Bankers Corp. v. Peters, etc.*, 193 Md. 655, the *Goldenberg* case was distinguished on the grounds that the contract was recorded in another state, and that the repairs were made before the recordation of the contract, respectively. These cases are not in point here.

Huntzberry did not tell the appellants not to take the car. The most that can be gathered from the testimony is that he expected his bill to be paid before they attempted to take it. Whether he would have forbidden them to take the car without paying his bill is a matter of speculation. Certainly, he had no legal right to forbid the taking. We think the testimony cannot be tortured into a statement forbidding them to enter the premises. Huntzberry testified: "I didn't feel as though they would look me up at one-thirty in the morning". Presumably, if they had called before he left the premises, he would not have thought that they were trespassing. Yet the statute creating the crime of trespass after notice takes no account of the time of day or night. There is no contention that the trespass involved a breach of the peace, or a forcible taking.

The State also argues that when Schmidt left the premises after his first visit, he must have known that he was not permitted to go on the premises to take the automobile, as otherwise he would have taken it then. So far as appears, Schmidt came by himself in a car, and he could not have driven off the other car without leaving his own. Nor does it appear that the repossessed car was in a condition to be driven. Apparently it had been towed to the lot, and there is no claim that it had been repaired. Without in any way approving the nocturnal visit, we think the statutory crime of trespass after notice was not established.

In view of our conclusion on this point, we express no opinion as to the appellants' contentions that a "wanton"

trespass was not made out, and that the entry was under a claim of right.

*Judgment and sentence reversed, costs to be paid by the County Commissioners of Anne Arundel County.*