MARK RICHARD KIRSTEL *v.*
STATE OF MARYLAND

[No. 96, September Term, 1971.]

*Decided December 1, 1971.*

[black redaction bar]

484

The cause was argued before MORTON, ORTH and POWERS, JJ.

*William Harris Zinman* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Stuart E. Hirsch, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

### *THE CONSTITUTIONALITY OF CODE, ART. 27, § 577B*

MARK RICHARD KIRSTEL asks us to declare Chapter 627, Acts 1969, unconstitutional. Effective 1 July 1969, it added new § 577B to Code, Art. 27, title "Crimes and Punishments," subtitle, "Trespass." It concerns public educational institutions of this State—" the Univer-

sity of Maryland, any of the State colleges, any community college or public school." Although set out in one paragraph with no subheadings it has two aspects. For ease of reference we shall refer to the first as the "denial of access" aspect and the second as the "criminal offenses" aspect. We give a compendium of its provisions:

1) *Denial of Access Aspect*

the highest official or governing body of the University of Maryland, any of the State colleges, any community college, and any public school may deny access to the buildings or grounds of the institution

a) to persons who are not bona fide, currently registered students, staff or faculty, who

i) have no lawful business to pursue at the institution, or,

ii) are acting in a manner disrupting or disturbing to the normal educational functions of the institution.

To this end administration staff and personnel of such an institution may demand of any person desiring to use or come upon the premises identification and evidence that he qualifies for use of the premises.

The denial of access aspect affects only the general public as distinguished from members of the academic community. Bona fide, currently registered students, staff and faculty at the institution are exempted from its provisions.

2) *Criminal Offenses Aspect*

Whoever

a) shall trespass upon the grounds of such institution, or

b) refuses to or fails to leave the buildings or grounds of such institution after be-

ing requested to do so by an authorized employee of the institution, or

c) wilfully damages or defaces any of the buildings, furnishings, statues, monuments, memorials, trees, shrubs, grasses or flowers on the grounds of such institution

shall be guilty of a misdemeanor and upon conviction fined not more than $1000, or imprisoned for not more than six months, or both.

The criminal offenses aspect applies to all persons, whether or not they are students, staff or faculty, who commit the proscribed acts.

On 25 February 1971 a jury in the Circuit Court for Baltimore County found that Kirstel, who was not a student or member of the staff or faculty at Towson State College, had committed the misdemeanor of refusing or failing to leave that institution's grounds after being requested to do so by an authorized employee. He was sentenced to 60 days and fined $200; the confinement was suspended for 2 years.[1]

Kirstel is entitled to a determination of the constitutionality only of those provisions of the Act under which he was convicted.[2] He was not affected by other provisions of the Act whether or not they are constitutional.[3]

---

1. The Court said: "The sentence of confinement in the Baltimore County Jail will be suspended for a period of two years, during which time this gentleman will certainly not be molested by the Court or by anybody else. There will be no probationary supervision imposed on him, he will be free to do as he pleases within the law. If, however, during that period of two years this gentleman commits an act which later results in a conviction of violation of criminal law, then the suspension of the jail sentence will be stricken out and he will be required to serve that sentence."

2. The constitutionality of the Act was tried and decided below on a pretrial "Motion to Quash Indictment", treated by the court at request of Kirstel also as a motion to dismiss the indictment and a motion to attack the jurisdiction of the court. The motion was denied prior to trial after argument by counsel.

3. The Act contains a severability clause. Section 2 reads:
"*And it be further enacted,* That if any provision of this Act or the application thereof to any person or circumstance is held invalid for any reason, such invalidity

The pertinent provisions are those which declare it to be a misdemeanor to refuse or fail to leave the buildings or grounds of the institution after being requested to do so by an authorized employee of the institution. But there are other provisions of the Act which are material to these pertinent provisions. We think it constitutionally compelled that the request to leave not be arbitrary, capricious or in the unfettered discretion of the employee. There must be standards for him to follow and we find it to have been the legislative intent to apply to the request to leave the same standards provided for the denial of access to the buildings or grounds, that is no lawful business to pursue at the institution or acting in a manner disruptive or disturbing to the normal educational functions of the institution. Of these two standards only the first is applicable to Kirstel in the facts and circumstances existent; we see no evidence sufficient to establish that he acted in a manner disruptive or disturbing to the normal educational functions of Towson State College. Therefore our inquiry is as to the constitutionality *vel non* of the legislature declaring it a crime for a person who has no lawful business to pursue at public educational institutions of this State to refuse or fail to leave the buildings or grounds of the institution after being requested to do so by an authorized employee.

Kirstel claims that the Act is unconstitutionally vague. "The general rule on vagueness, as it has been developed in connection with the construction of criminal statutes, is that all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' *United States v. Petrillo* (1947) 332 U. S. 1, 8, 68 S. Ct. 1538, 91 L. Ed. 1877." *Sword, et al v. Fox, et al,* 446 F. 2d 1091 (4th cir. 1971). We set out the rule more fully in *Lashley v. State,* 10 Md. App. 136, 142:

shall not affect the other provisions or any other application of this Act which can be given effect without the invalid provision or application, and to this end, all the provisions of this Act are hereby declared to be severable."

> "The requirement of a reasonable degree of certainty in the legislation, especially in the criminal law, is a well established element of the guarantee of due process of law. No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed of what State law commands or forbids; consequently, a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. *Lanzetta v. New Jersey,* 306 U. S. 451; *Connally v. General Construction Co.,* 269 U. S. 385."

We believe the provisions of the Act here considered meet the test of the rule on vagueness. Certainly the language of the Act that a person who refuses or fails to leave after being requested to do so is guilty of a misdemeanor conveys sufficiently definite warning as to what conduct is proscribed when measured by common understanding and practices. The act forbidden—not leaving after being requested—is precise, clearly expressed and delineated. No speculation is required as to the meaning of that provision; men of common intelligence need not necessarily guess at its meaning and differ as to its application. Nor do we find vague the standard required for the request. We construe "lawful business" within the meaning of § 577B as we construed it in our consideration of § 577A in *Anderson v. State,* 12 Md. App. 186. We find it means any constitutionally protected activity. On this construction we concluded in *Anderson,* at 192:

> "[T]he range of uncertainty inherent in the language is not such as would 'broadly stifle fundamental personal liberties when the end can be more narrowly achieved.' *Aptheker v. Secretary of State,* 378 U. S. 500, 508, quoting *Shelton*

*v. Tucker,* 364 U. S. 479, 488. We do not believe that the phrase 'lawful business' is so unprecise and has so uncertain a meaning that it fails to inform a defendant of the charge against him. We find that the statute does not offend the Due Process Clause of the Constitution because of it."

We adopt that conclusion here. We find that the provisions of § 577B before us are neither unconstitutionally vague as to the standards imposed nor unconstitutionally broad as applying to constitutionally protected conduct. We hold that they do not violate due process of law.

Kirstel also contends, but advances little argument in support thereof, that the Act violates "the right of free assembly and association" and the requisites of free speech.[4] We point out: "The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time." *Cox v. Louisiana,* 379 U. S. 536, 554. See *Adderley v. Florida,* 385 U. S. 39. And the Court said in *Food Employees v. Logan Plaza,* 391 U. S. 308, 320:

"Even where municipal or state property is open to the public generally, the exercise of First Amendment rights may be regulated so as to prevent interference with the use to which the property is ordinarily put by the State."

Or as Mr. Justice Fortas said:[5]

"Public use does not authorize either the general public or the university faculty and students to use them in a way which subverts their purpose and prevents their intended use

---

4. "Congress shall make no law * * * abridging the freedom of speech, * * * or the right of the people peaceably to assemble * * *." Amendment I to the Constitution of the United States.

5. As quoted in Wright, The Constitution on the Campus, 22 Vand. L. Rev. 1027, 1040 (1969) attributing it to A. Fortas, Concerning Dissent and Civil Disobedience, 46-47 (1968).

> by others. The public character of a university does not grant to individuals a license to engage in activities which disrupt the activities to which those facilities are dedicated."

So the freedoms of speech and assembly may not be exercised on public property without regard to its primary usage. The State may enact and enforce reasonable, non-discriminatory laws governing conduct in its buildings and on its grounds. We find that the provisions of § 577B are reasonable and non-discriminatory. We hold that the provisions here considered do not violate First Amendment guarantees of free speech and assembly.

Kirstel, relying on *Dunkel v. Elkins,* 325 F. Supp. 1235 (U.S.D.C. D. Md. 1971), reads into the Act the requirement of an administrative hearing. In *Dunkel* a three-judge court, finding that an educational institution possesses the power to suspend students and teachers for proper reasons, held "that a state university has no less a right to prohibit access to its campus to an 'outsider' to the university community if he has engaged in conduct which violates constitutional standards clearly embodied in state law, particularly if there is reason to believe that he will again engage in such conduct." At 1245. But a proviso was added: "However, except in an emergency, such powers of control should not be exercised, without a prior administrative hearing, to deprive any person, as an individual, of access to a state university campus." The court rejected the contention that § 577B was unconstitutional on its face because it failed to require a hearing since Code, Art. 41, § 251 of the Administrative Procedure Act requires a hearing in any "contested case" and § 244 (c) of that Article defines "contested case" to mean "* * * a proceeding before any agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing." Deeming the University of Maryland to be an "agency", see *Dunkel,* note 23 at 1247, and in

the light of its finding that there was a constitutional right to a hearing, it held that such hearing was prescribed by §§ 244 and 251. But the court was dealing with the "denial of access" aspect of the Act. Dunkel had been notified by letter from the President of the University of Maryland that henceforth he was denied access to that institution's buildings and grounds and if found upon the premises or property would be subject to prosecution under the statute. He brought an action for declaration of unconstitutionality of § 577B and requested that the court enjoin the President of the University of Maryland, the Governor and the State from enforcing its provisions against him or any other person. Thus the "criminal offense" aspect of the statute, unlike the instant case, did not come into play.

Whether or not an administrative hearing is constitutionally required lawfully to deny a person access to the buildings and grounds of a designated institution, it is not so required when the criminal provisions of the Act are invoked.[6] Then the questions of "lawful business" and "disruptive acts" are not to be resolved at an administrative hearing but at a criminal trial. At the criminal trial the State must establish beyond a reasonable doubt that the accused had no "lawful business" to pursue or was engaged in "disruptive acts," each of which is a matter for the trier of fact. It follows therefore that if a person either before or after he has received notice denying him access persists in conduct which violates the criminal proscriptions of the statute, he thereby waives his right to an administrative hearing, where it may have been applicable, electing to have the questions of "lawful business" or "disruptive acts" determined by the trier of fact in a criminal trial. In other words, if a

---

6. We observe that while the standards of "lawful business" and "disruptive acts" are necessary to the offenses of trespass and the failing to leave created by the act, they clearly are not applicable to the third offense proscribed—destruction of property of the institution. Regardless of the right of a person to be on the grounds or in a building of the institution, he would be guilty of the third offense by committing the proscribed acts.

person received a notice denying him access but, before an administrative hearing can reasonably be held, he defies it and is arrested, or, being on the grounds or buildings of an institution, he is arrested because he fails or refuses to leave after being requested to do so by an authorized employee who is satisfied under the reasonable man standard upon information obtained by demanding identification and evidence or otherwise that such person is not qualified for use of the premises, such person would not in any event be entitled to an administrative hearing, as all questions bearing on his guilt or innocence are then matters within the ambit of the criminal proceedings. We do not construe *Dunkel* as holding otherwise. The court pointed out, at 1248:

> "[W]hat was immediately at issue after President Elkins served his May 18, 1970 notice on Dunkel was not the constitutionality of any possible future criminal proceeding growing out of any failure by Dunkel to abide by that section 577B notice, but rather the constitutional right of a campus outsider (Dunkel can so fairly be described) not to be excluded from the University's campus, upon which he had a limited constitutional right to be present, without affording to him an administrative hearing to determine whether, in accordance with the standards provided by section 577B, the University could deny to him entry upon its campus."

We find it patent that the court was applying the administrative hearing requirement to the denial of access aspect of the Act.

A statute should be construed whenever possible so as to uphold its constitutionality. It would not be stricken down as unconstitutional unless it violates the Constitution unmistakably. Even where there is doubt of the validity of a statute, the Court will resolve the doubt in favor of the interpretation that will reconcile it with lawful limitation of legislative power. *Anderson v. State,*

*supra,* at 198. We hold that Code, Art. 27, § 577B is constitutional on its face and that the lower court did not err in denying the motion to dismiss the indictment.

## THE INSTANT CASE

Kirstel, an instructor in the photography department at the Maryland Institute College of Art and a professional photographer, was arrested on 29 October 1970 at Towson State College, a public college of Maryland. Code, Art. 77A § 11 (a). The incident resulting in his arrest had its beginnings in an invitation extended to him. There was evidence adduced legally sufficient for the jury to have found that about 27 September he had been invited to exhibit his work in Van Bokkelen Hall on the Towson State campus from 29 October to 19 November and that on 11 November he was to deliver a lecture, all for a "stipend" of $200. On 27 October the invitation was withdrawn and the withdrawal made known to him.[7]

---

7. The only thing in writing relating to the invitation was an undated letter, mailed about 27 September 1970, to Kirstel from Carmen Robb, an instructor in the Department of Art at Towson State who was chairman of the Department's Speaker's Committee, the function of which was to obtain visiting artists to speak to the students. The letter confirmed Kirstel's appointment as visitor and exhibitor on 11 November 1970 at a "stipend" of $200. "The arrangements for the visit are informal. The day begins with an extended coffee hour at 10:00 a.m. with students free to come and go asking questions of you, and looking at whatever original work you wish to bring. We would like for you to be our guest for lunch with interested students to be able to spend this time with you also. You should be finished mid-afternoon." James R. Paulsen, also an instructor in the Art Department at Towson State, was chairman of the Department's Exhibition Committee, composed of two members of the Art faculty in addition to him. According to him the Exhibitions Committee decided to have an exhibit of Kirstel's work in conjunction with the lecture arranged by the Speaker's Committee. Exactly how the final terms were arranged is not clear, but Paulsen said the agreement was made by him with Kirstel. In any event it seems undisputed that Kirstel was to set up an exhibition of his photographs in Van Bokkelen Hall on the Towson State campus on 29 October 1970 and that they would remain on display until 19 November 1970. On 11 November he would speak. The $200 would cover the exhibition and the lecture.

On 27 October 1970 Dr. James L. Fisher, President of Towson State sent a memorandum to a Mr. Pollack, Chairman of the Art Department and "Members of the Art Faculty." Stating that it was in response to a request by the Art Department for college sanction of the exhibit (under date of 2 November a memorandum to Fisher bearing 18 signatures, apparently those of members of

Nevertheless about 11:15 a.m. on 29 October Kirstel arrived at Van Bokkelen Hall and began to take photographs out of his car in the presence of about 150 people including members of the press. Gene Dawson, supervisor of campus security at Towson State, identified himself to Kirstel and told him "in essence that he was denied the opportunity to display his art works, and that if he did not remove them he would be accountable under [the law]." [8] Dawson left and returned in about 15 minutes. While he was gone Kirstel took the opportunity, in his words, "to make a speech to the T.V. cameras and crowd." When Dawson returned he read the second card to Kirstel, giving him 10 minutes to remove the photographs.[9]

---

the Art Department, stated that they would like Dr. Fisher "to know unequivocally that we did not request censorship by you") the import of the memorandum was that the Kirstel photographs were not to be exhibited in Van Bokkelen Hall. So exhibited, "not only the entire College community but the entire public as well" would be involved. It was Fisher's judgment that this would not be in the best welfare of the entire College for which he was responsible. He made clear his action was not to be considered an encroachment on academic freedom. "If any of you had chosen to use the Kirstel photographs in your classes, there would have been no issue as far as I am concerned. Your classroom is your province and you, subject to the evaluation of your peers, are the judge of what is suitable and effective there, but in this case the issue is neither confined to your classrooms nor to your department."

There was evidence that Paulsen showed Kirstel Fisher's memorandum on the evening of 27 October. "I said, I don't know just what we'll do about the agreement which we have made, $200.00, and I told him that it was simply beyond my control any more, higher authority had ruled and now it was up to him." Kirstel admitted that Fisher's memorandum was shown to him.

8. This course of action was pursuant to instructions given by Kenneth A. Shaw, the Academic Vice President of Towson State and acting president on 29 October, Fisher being out of the city, to Wayne N. Shelley, Vice President and Director of Business Finance. Shelly called the Office of the Attorney General, was given the content of what to tell Kirstel and passed this on to Dawson in the form of two typewritten cards. Dawson read the first card to Kirstel on the initial contact. Its language was as follows: "You have been denied the opportunity to exhibit your art display. We are now requesting you to remove these works from the campus. You personally are welcome to stay as long as you abide by our policies. If you do not remove your exhibit you are in violation of Article 27 Chapter 577A and 577B of the Maryland Criminal Code. Per the terms of these laws you will be held accountable to civil authorities. Please remove the exhibit."

9. The second card was the same as the first except there was added: "If you do not remove the exhibit from the campus in 10 minutes we will hold you accountable to civil authorities."

Kirstel took the time to hang up a couple of pictures. He was arrested at the end of the 10 minute period.[10] Kirstel testified: "I indicated to Mr. Dawson, as far as I was concerned I had a moral and legally binding contract, I had been invited on authority of the exhibitions committee, my reputation professionally, my artistic reputation was involved, I was there by virtue of right, by invitation, and I was expecting to hang the show."

In the factual posture of this case we see no controlling question of free speech or right of assembly or denial of due process of law. In short, we do not think that the case turns on the violation *vel non* of a constitutional right. Kirstel had a limited constitutional right to be present on the Towson State campus but he had no constitutional right to hang his photographs in Van Bokkelen Hall nor did he have a constitutional right either to deliver a lecture to the students of Towson State or make a speech to the general public in that Hall. Whatever right he had to do so was by contract and even if there was a valid contract unlawfully breached, the breach would not bestow upon him the constitutional right to hold his exhibition or give his lecture.[11] It would be unreal to say that such failures of Towson State officials to act in accordance with the law, redressable by state judicial procedures, are state acts violative of the federal constitution. Kirstel may have been anxious to exhibit his work although it did not appear that he would have been unduly prejudiced by not commencing the exhibition on 29 October. "Delay is unfortunate but the expense and an-

---

10. The crowd became restless. Dawson was booed and there were shouts "Don't let him take Kirstel." Kirstel testified: "I had heard rumors about a lot of cops being out back, State Troopers, and Dawson whispered to me, if we don't take you this way we'll take you some other way, so, I broke open the crowd and I made a short speech from the steps of Van Bokkelen Hall to the effect that I supported the crowd's actions, but * * * inasmuch as they were there to support me, but that I asked them to demonstrate peacefully and to let Dawson arrest me peacefully and that we would pursue the case further in the press and in the courts."

11. cf. *Brooks v. Auburn University*, 412 F. 2d 1171 (5th cir. 1969); *Buckley v. Meng*, 230 N.Y.S.2d 924 (Sup. Ct. N. Y. Co. Part I, 1962).

noyance of litigation is a price citizens must pay for life in an orderly society where the rights of the First Amendment have a real and abiding meaning. Nor must we say that a state's requirement that redress must be sought through appropriate judicial procedure violates due process." *Poulos v. New Hampshire,* 345 U. S. 395, 409. Nor does the constitution require that we approve the violation of a valid criminal statute because the school authorities may have been wrong in withdrawing Kirstel's invitation. That is, any failure to carry out the agreement on the part of Towson State is no bar to a prosecution under § 577B, found by us to be constitutional. If Kirstel preferred to air his grievances in such a way as to commit a criminal offense he must accept responsibility therefor. If his conduct was such as proscribed by the Act, then he was guilty. The test was not that Kirstel "did not think Mr. Dawson had any right or authority to eject me from the campus at that time." As the Supreme Court said in *Walker v. City of Birmingham,* 388 U. S. 307, at 320-321:

> "[I]n the fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his motives, and irrespective of his race, color, politics, or religion. This Court cannot hold that the petitioners were constitutionally free to ignore all the procedures of the law and carry their battle to the streets. One may sympathize with the petitioners' impatient commitment to their cause. But respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom."

In the light of the view which we take of this case, the question to be resolved is one of the sufficiency of the evidence. We have no difficulty in concluding that the lower court was not wrong in permitting the evidence to go to the jury. We find that the evidence was sufficient

in law to show directly or by rational inferences that Kirstel had no lawful business in Van Bokkelen Hall, a building of a State college, and that he refused to leave after being requested to do so by an authorized employee of the institution. Thus the jury could be properly convinced beyond a reasonable doubt of his guilt of the offense charged. *Williams v. State*, 5 Md. App. 450. We hold the lower court did not err in denying the motion for judgment of acquittal.

*Judgment affirmed; appellant to pay costs.*