LAWRENCE GENTRY DEAN *v.* STATE
OF MARYLAND

[No. 205, September Term, 1971.]

*Decided December 17, 1971.*

The cause was argued before ORTH, THOMPSON and MOYLAN, JJ.

*Selma W. Samols* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *E. Allen Shepherd, Jr., Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

LAWRENCE GENTRY DEAN was tried before a jury in the Circuit Court for Prince George's County on charges arising from an incident on the campus of the University of Maryland on 14 May 1970. He was found

guilty of two offenses, the common law crime of forcible entry and a statutory crime proscribed by Code, Art. 27, § 577B. He was sentenced to 3 months on each conviction, the sentences to run concurrently. He appealed.

## FORCIBLE ENTRY

"A forcible entry * * * is an entry on real property peaceably in the possession of another, against his will, without authority of law, by actual force, or with such an array of force and apparent intent to employ it for the purpose of overcoming resistance that the occupant in yielding and permitting possession to be taken from him must be regarded as acting from a well-founded apprehension that his resistance would be perilous or unavailing." 35 Am. Jur. 2d, § 1, p. 891.[1] See 2 Wharton, *Criminal Law and Procedure* (1957), §§ 867-877, pp. 734-740; Perkins, *Criminal Law* (2d ed.), pp. 410-411; Hochheimer, *Criminal Law* (2d ed.) §§ 327-329, pp. 360-362; 4 Blackstone, *Commentaries,* 148.

Maryland has long recognized that proceedings in cases of forcible entry form a part of our criminal jurisprudence. *Isaac v. Clarke,* 9 G. & J. 107, 114 (1837). The offense was included in our inheritance of the English common law and statutes. Art. 5, Declaration of Rights, Constitution of Maryland. See *State v. Magliano,* 7 Md. App. 286, 292-294. Blackstone, listing it in his Commentaries in "Book the Fourth—Of Public Wrongs" at 148 as an "offense against the public peace" described it as "committed by violently taking or keeping possession of lands and tenements, with menaces, force, and arms, and without authority of law." He gave an aperçu of its history:

"This was formerly allowable to every person

---

1. "Forcible detainer, on the other hand, is controlled by circumstances existing after entry, whether forcible or not, and may, and usually does, consist of the unlawful holding or detention of real property by force or by threats or menaces after a peaceable entry." Ibid. "Forcible entry and forcible detainer are two distinct offenses. * * * Force is an ingredient of each." *Roth v. State,* 89 Md. 524, 527.

disseised, or turned out of possession, unless his entry was taken away or barred by his own neglect, or other circumstances; which were explained more at large in the third volume of these Commentaries. But this being found very prejudicial to the public peace, it was thought necessary by several statutes to restrain all persons from the use of such violent methods, even of doing themselves justice; and much more if they have no justice in their claim. So that the entry now allowed by law is a peaceable one; that forbidden is such as is carried on and maintained with force, with violence, and unusual weapons." Ibid.

All forcible entries were punishable with imprisonment and ransom at the king's will by 5 Rich.II, st.1, c 8, enacted at Westminster in 1381. It provided that "none from thenceforth shall make an entry into any lands and tenements but in cases where entry is given by law; and in such cases not with strong hand nor with multitude of people, but only in peaceable and easy manner, and if any man from henceforth shall do to the contrary, and thereof be duly convicted, he shall be punished by imprisonment of his body." [2] Kilty held the statute "applicable to the province" and "proper to be incorporated" on his finding. "This statute, and others on the same subject, which will hereafter be noticed, have always been practised under the province and in the state." *Report of English Statutes* (1811), 222. See also Alexander's *British Statutes* 184.[3] *Manning v. Brown*, 47 Md. 506, 511

---

**2.** The Act gave no civil remedy and applied only to forcible entry. 15 Rich.II ch.2 extended the remedy to forcible detainer after an unlawful entry. 8 Henry VI ch.9 dealt with peaceable entry and forcible holding and afforded to the aggrieved party a remedy by "Assise of Novel Disseisin or a Writ of Trespass against such Disseisor." Other statutes, on the subject, for example, 31 Eliz. ch. 11 and 21 James I. ch. 15 were subsequently passed.

**3.** Though no official adoption of Alexander's *British Statutes* has ever been made, it is fairly certain that within its covers is the text to all the English Statute law in force in Maryland when

recognized forcible entry as "an offense against the public peace." After discussing the right of entry under the early common law prior to the statutes to restrain forcible entries,[4] it set out the declarations of Sta.5, Rich.II, ch.8. cf. *Krauss v. State,* 216 Md. 369, 372; *Bouie v. Columbia,* 378 U. S. 347, 358 and note 6. See also Stephen's *Commentaries in the Law of England,* vol.III, p.356 and vol.IV, p.342.

The misdemeanor of forcible entry requires an actual entry upon land or tenements as contrasted with an attempt to enter. It is the force with which the entry is made that distinguishes it from an ordinary trespass.[5] The force may be actual or there may be a show of force which has the effect of preventing resistance. It must be such as to create a reasonable apprehension that it must be yielded to or a breach of the peace will be committed. 2 Wharton's *Criminal Law* (1957), § 869, p. 736. Hochheimer put it thusly: "[T]he violence may consist of actual force applied to the person, of breaking open a house, of an array of numbers, of anything tending to

---

William Kilty made his report to the General Assembly of Maryland in 1810. (See 8 Yale Law Journal 353, 361, *Adoption of English Law in Maryland;* Niles, *Maryland Constitutional Law* (1915) 17.)

4. "At the common law, and prior to the old statutes to restrain forcible entries, wherever a right of entry existed, the party entitled to such right might lawfully enter, out the disseisor, and regain the possession by force, if force was necessary for that purpose. I Reeve's Hist. E.L. 322; 3 Ib. 202; Co. Litt. 257, a note (1) by Butler. The exercise of this right frequently gave rise to tumult and breaches of the peace, and to restrain such disorders, the Stat. 5, Rich. II, ch. 8, was enacted, * * *." 47 Md. at 511.

5. "An unlawful entry upon land * * * under circumstances of mere trespass is not punishable as a crime." Hochheimer, *Criminal Law,* 2d ed., § 327. Forcible entry "differs from trespass quare clausum fregit, first of all, in the degree and kind of force with which the entry is made, manu forti, with unusual weapons, or with menace to life or limb. The words 'manu forti' are understood to impart something criminal in its nature, something more than is meant by the words 'vi et armis', and distinguish this kind of entry from an ordinary trespass by entering into another's land, which is not so violent as a forcible entry. 35 Am.Jur.2d, § 4 at 893.

cause apprehension of bodily hurt or breach of the peace in the event of resistance." § 327 at 360. So "[a]n entry is forcible when effected or accompanied by such force or threats of personal violence, either actual or implied from the actions of the defendant, as are likely to intimidate the possessor of the land or his family and to deter them from defending their possession, or to provoke a breach of the peace." [6] *Wharton, supra,* § 869, p. 736. An entry by an open window, or by opening the door with a key or by mere trick or artifice is not deemed a forcible entry. Id., § 870, p. 737. But the force employed need not put those in possession actually in fear. 35 Am.Jur. 2d § 58, pp. 929-930. It is sufficient at the common law that the entry be against a person in possession of the land and tenements, that is that he had actually entered on and peaceably occupied the premises. "[I]t is

---

6. "There is a split of authority as to what constitutes a breach of the peace. Some decisions tend to broaden the definition by including any violation of order or decorum, and hold that fighting or rioting or a show or threat of violence is not an essential element; * * * but we think the better rule is that of the common law which required evidence of an affray, actual violence, or conduct tending to or provocative of violence by others." *Wanzer v. State,* 202 Md. 601, 609. (citations omitted). In *Great Atl. & Pac. Tea Co. v. Paul,* 256 Md. 643, 655 the Court of Appeals said: "Breach of the peace signifies disorderly, dangerous conduct disruptive of public peace * * *." See *Luthardt v. State,* 6 Md. App. 251, 260; *Lynch v. State,* 2 Md. App. 546, 557. Black's *Law Dictionary* (Rev. 4th ed.) defines breach of the peace as "a violation or disturbance of the public tranquility and order." p. 236. It describes the term as generic. Blackstone lists offenses against the public peace, "the conservation of which is entrusted to the sovereign and his officers * * *." 4 Blackstone's Comm. 142. Four of them are felonious: the riotous assembling of twelve persons or more and not dispersing upon proclamation; riotous demolition of buildings and machinery; threatening letters; and pulling down or destroying any lock, sluice or floodgate on navigable rivers. The remaining were misdemeanors of which forcible entry was "a ninth." Others were malicious destruction of turnpike gates and toll bars; malicious destruction of works of art; affrays; riots and unlawful assemblies; tumultuous petitioning; going armed with weapons; spreading false news; false prophesying; challenges to fight; libels. It may be that there were "apprehended" breaches of the peace as distinguished from "constructive" breaches of the peace, which Black defines as an unlawful act which, "though wanting the elements of actual violence or injury to any person, is yet inconsistent with the peaceable and orderly conduct of society."

not necessary to show that his possession was held under title in any sense other than that of being peaceably held and enjoyed by him at the time the forcible act was done by the defendant." [7] Ibid. Thus "[t]he ownership or right to possession of the land is not in issue in a prosecution for forcible entry and detainer. The defendant can neither attack the victim's title to the property nor attempt to establish his own." *Wharton, supra,* § 874, p. 739. And it is not necessary that the possessor have been personally present on the premises at the time of the forcible entry, if in actual exercise of authority and control over them. 35 Am. Jur. 2d § 58. As to criminal agency, "a person who is present at the time of and cooperating with another in making a forcible entry is guilty of the offense, whether or not he actually comes on the land." Id., § 59. [8]

*The Indictment*

Dean claims that the indictment failed to charge the offense of forcible entry. [9]

Rule 712 a provides: "An indictment shall contain a plain, concise and definite statement of the essential facts constituting the specific offense with which the defendant is charged. It need not contain any other matter not necessary to such statement, * * *. An unnecessary allegation may be disregarded as surplusage * * *." Count 1 of the indictment here presented that Dean "did unlawfully and forcibly enter into and upon the Administration Building of the University of Maryland then and there in possession of the Board of Regents of the University of Maryland and did thereupon occupy the said premises with and by such array of force as did cause

---

7. This is in accord with Hochheimer, *supra,* who stated that forcible entry is punishable as a crime "if the person dispossessed had mere peaceable possession, the matter of title being immaterial." § 327.

8. And *Wharton* says that a joint tenant or tenant in common may be guilty of the offense against his cotenants. § 873, p. 738.

9. Dean filed a pretrial motion to dismiss the indictment for the reasons that it failed to charge an offense and was vague and indefinite. The motion was denied upon hearing. See Rule 725 (b); *Phenious v. State,* 11 Md. App. 385, 390-393.

apprehension on the part of agents of the Board of Regents of the University of Maryland of breach of the peace in the event that said agents resist such forcible entry in violation of the common law of Maryland."

We said in *Ward v. State*, 9 Md. App. 583, 587-588:

> "The rule which seems to be generally recognized draws a line of demarcation between an indictment or information which completely fails to state an offense and one which alleges all the elements of the offense intended to be charged and apprises the accused of the nature and cause of the accusation against him, even though it is defective in its allegations or is so inartfully drawn that it would be open to attack in the trial court. *Putnam v. State*, 234 Md. 537; *Baker v. State*, 6 Md. App. 148."

We followed and applied the rule in *Rosenberg v. State*, 12 Md. App. 20, 24. We have no difficulty in determining that the count here challenged gave a plain, concise and definite statement of the essential facts constituting the common law offense of forcible entry as discussed *supra.* We find that count 1 properly charged forcible entry.[10]

Dean also alleges that count 1 was lacking in specificity. We do not agree. It charged the offense and we do not think that it was fatally defective in failing to allege such other facts as would enable Dean to prepare his defense in the constitutional sense. *Seidman v. State*, 230 Md. 305. Dean complains that the indictment did not "state the hour of entry", whether or not "the building was closed", the "array of force used", what precise acts he did "to cause apprehension on the part of the agents of the Board of Regents", who the agents were, the source of their authority. Such of these points as may have been relevant and material were matters of

---

10. See the ordinary form of charging forcible entry set out in *Hochheimer, supra*, § 329, pp. 362-363. There appears to be no such material difference as would support the claim that the count as here drawn failed to charge an offense.

proof; they were not essential to the sufficiency of the indictment. The count as drawn served its purpose of apprising Dean of the crime charged within the contemplation of Art. 21 of the Declaration of Rights of the Maryland Constitution. See *Presley v. State*, 6 Md. App. 419, 430; *Lynch v. State*, 2 Md. App. 546; *Dortch and Garnett v. State*, 1 Md. App. 173.

We hold that the lower court did not err in denying the motion to dismiss count 1 of the indictment.

*The Sufficiency of the Evidence*

There was evidence adduced from which the jury could properly find that about 8:00 p.m. on 14 May 1970 a group of persons gained entry to the Administration Building of the University of Maryland through the northwest entrance. The top of the door had been splintered and the door forced open. A college policeman requested the 10 or 15 people who had entered to leave and they did so. He tried to secure the door but he could not close it against the force of those attempting to gain entrance. About 40 or 50 persons entered the lobby. Reinforcements called by the policeman arrived and in about 20 minutes the lobby had been cleared. During that time, however, requests to leave were not immediately complied with. Persons milled around the lobby and several changed the lettering on the directory board to such slogans as "Power to the People", "Free Food for Dining Room Whores", and "Fuck Elkins". There were judicial identifications of Dean as one of those in the building changing the lettering on the directory board and that he kept on doing so when requested to leave. He and a companion put the sign in the center of the lobby and asked a lieutenant of the campus police department if he were going to destroy it.[11]

---

11. After the building had been cleared the second time about 35 or 40 students returned, prevented the doors from being nailed shut and re-entered the building. The building was again cleared, whereupon the students broke the windows by throwing bricks and made a massive assault, breaking all the doors through police barricades. This third phase of the violence is not considered with respect to Dean as it was not shown that he participated therein.

Dean concedes that the evidence showed that he was "part of a group that entered the administration building." But he argues that there was no proof *he* broke the doors to gain entry, or that *he* was the first to enter the building after it had been secured. He further urges that the evidence did not establish that the entry was "of such nature that it engendered a fear or apprehension on the part of those in possession that they would suffer some bodily harm", and points out that he did leave the building, not remaining after all the others had left. He did not dispute that the Administration Building was in the peaceable possession of the Board of Regents.

We find that the evidence was sufficient in law to establish that the Administration Building of the University of Maryland was peaceably in the possession of the Board of Regents, that Dean entered thereon against the will of the possessors, without authority of law and by actual force. We point out that it was at least a rational inference that he was present at the time of entry and cooperating with others in making the forcible entry; this was enough to show his criminal agency. And since actual force was used, it seems that the apprehension of bodily hurt or that the peace would be breached in event of resistance was not an essential element. In any event, it is only required that the show of force be such as is likely to intimidate the possessor, not that he was actually put in fear, or such as is likely to result in a breach of the peace. We believe that the jury could have properly concluded on the evidence before it that one of these was the likely result. We note that it was no defense to the crime of forcible entry that Dean may have had the right to enter the building under normal circumstances; it is no defense that a defendant had the legal title to and have the right of immediate possession of the real estate in question. *Perkins, supra,* at 410. In the words of *Perkins,* ibid: "The social interest in the peace and quiet of the community requires that no peaceful possession of real estate should be disturbed by such violent means."

We hold that the lower court did not err in denying the motion for judgment of acquittal as to the first count of the indictment. *Williams v. State,* 5 Md. App. 450.

## CODE, ART. 27, § 577B

*Constitutionality*

Attacking his conviction of the statutory offense Dean asks us, as we were asked in *Kirstel v. State,* 13 Md. App. 482, to declare § 577B unconstitutional. He bases his request on two grounds : the statute is vague in violation of due process, and it is discriminatory in violation of equal protection.

Dean is entitled to a determination of the constitutionality only of those provisions of the statute under which he was convicted. He was not affected by other provisions of the statute, whether or not they are constitutional, as the Act has a severability clause. Acts 1969, ch. 627, § 2. We found in *Kirstel* that the statute has two aspects which we styled the "denial of access aspect" and the "criminal offenses aspect." Dean, as was Kirstel, was convicted of a misdemeanor created under the second aspect, namely that he refused or failed to leave the building or grounds of a public educational institution after being requested to do so by an authorized employee of the institution. We said in *Kirstel* that the employee must have standards to follow in making the request and we found that it was the legislative intent that the standards be that the person requested to leave had no lawful business to pursue at the institution or that he was acting in a manner disruptive or disturbing to the normal educational functions of the institution, the test being that it would so appear to a reasonable man.

In considering whether the Act was unconstitutionally vague in *Kirstel* we applied the general rule that "all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' " *United States v. Petrillo,* 332 U. S. 1, 8. We said:

"We believe the provisions of the Act here

considered meet the test of the rule on vagueness. Certainly the language of the Act that a person who refuses or fails to leave after being requested to do so is guilty of a misdemeanor conveys sufficiently definite warning as to what conduct is proscribed when measured by common understanding and practices. The act forbidden—not leaving after being requested—is precise, clearly expressed and delineated. No speculation is required as to the meaning of that provision; men of common intelligence need not necessarily guess at its meaning and differ as to its application. Nor do we find vague the standard required for the request. We construe 'lawful business' within the meaning of § 577B as we construed it in our consideration of § 577A in *Anderson v. State,* 12 Md. App. 186. We find it means any constitutionally protected activity."

We adopt the conclusion we reached in *Anderson,* at 192:

"[T]he range of uncertainty inherent in the language is not such as would 'broadly stifle fundamental personal liberties when the end can be more narrowly achieved.' *Aptheker v. Secretary of State,* 378 U. S. 500, 508, quoting *Shelton v. Tucker,* 364 U. S. 479, 488. We do not believe that the phrase 'lawful business' is so unprecise and has so uncertain a meaning that it fails to inform a defendant of the charge against him. We find that the statute does not offend the Due Process Clause of the Constitution because of it."

Unlike *Kirstel* we also have before us in the instant case the "disruptive acts" standard. It too is reasonably compatible with a constitutional interpretation, that is that only non-constitutionally protected disruptive activities are prohibited. We accept that interpretation and shall apply the standard accordingly.

We hold, in the light of the construction to be given the provisions affecting Dean, that they are not unconstitutionally vague as to the standards imposed or unconstitutionally broad as applying to constitutionally protected conduct.

We do not believe that the provisions deny equal protection. Dean concedes that the buildings and grounds are public facilities subject to restriction of their use by the State in a reasonable and nondiscriminatory manner. *Brown v. Louisiana*, 383 U. S. 131, 143; *Dunkel v. Elkins*, 325 F. Supp. 1235, 1243 (U.S.D.C.D. Md. 1971). But he urges that § 577B discriminates "as between persons or groups of persons in the incidence of the law," citing *Goesaert v. Cleary*, 335 U. S. 464, 466. We see no classifications with respect to the provisions here pertinent. The criminal offenses aspect applies to all persons whether or not they are students, staff or faculty.[12] "Whoever" refuses or fails to leave after being requested by an authorized employee commits the pro-

---

12. The denial of access aspect, however, exempts bona fide, currently registered students, staff and faculty. The class application of the denial of access aspect and the universal application of the criminal offenses aspect is made clear in the title to chapter 627, Acts 1969:

"AN ACT to add new Section 577B to Article 27 of the Annotated Code of Maryland (1967 Replacement Volume), title 'Crimes and Punishments.' subtitle 'Trespass,' to follow immediately after Section 577A thereof, providing that persons who are not bona fide, currently registered students, staff or faculty of the University of Maryland, any of the State Colleges, any community college, or any public school within the State and who have no apparent lawful business to pursue at the institution, or who are acting in a manner disruptive of or disturbing to the normal educational functions of the institution, may be denied access to the buildings or grounds thereof; and providing that administrative personnel and staff of the institution may demand identification of anyone desiring to use or come upon the institution's premises; and further providing that trespassers upon the grounds of the University of Maryland, any of the State Colleges, any community college, or any public school within the State who refuse or fail to leave the premises after being requested to do so by an authorized employee thereof, and those who wilfully damage or deface the buildings or grounds of such institutions shall be guilty of a misdemeanor, and providing penalties therefor."

scribed offense. The construction we have placed on this provision answers Dean's contention that "What standards an entrant must conform to are left to the vagaries of the highest officials or governing body of the University of Maryland or the administration personnel and staff." We see no discrimination "as between persons or groups of persons in the incidence of the law." We conclude the pertinent provisions do not deny equal protection. We hold that they are constitutional on their face.

*The Indictment*

Dean claims that the 3rd count of the indictment failed to charge an offense and lacked specificity. It reads that Dean "* * * did unlawfully refuse and fail to leave and vacate the Administration Building of the University of Maryland after being requested to do so by authorized employees of the institution, contrary to the form of the Act of the Assembly in such cases made and provided * * *." We think that the count as drawn was so in the words of that part of Art. 27, § 577B here material as fully to meet the test as discussed in *Baker v. State,* 6 Md. App. 148, 155-157. We find that the 3rd count was as fully descriptive of the offense alleged as is the language of the statute.[13] Dean argues that the count omits any mention of whether or not he was a bona fide, currently registered student at the institution, but we have seen that all persons, including such students are within the ambit of the offense in any event. He points out that it did not state that he had no lawful business to pursue or that he was committing disruptive acts or how the authority of the employee making the request was derived, but these were matters of proof. Nor do we agree that the count must fall for lack of specificity. We do not feel that it was fatally defective in

13. The part of the statute with which we are here concerned reads: "[W]ho refuses or fails to leave the buildings or grounds of [the University of Maryland] after being requested to do so by an authorized employee of the institution, * * * shall be guilty of a misdemeanor * * *."

a constitutional failure to allege such facts as would enable Dean to prepare his defense. Urging that it was not specific he asks what time the alleged violation was committed, what specific conduct constituted the proscribed refusal to leave, who were the requesting employees and from what source did they derive their authority, what were the disruptive acts, what did he do to disturb the normal functions of the University.[14] These again were matters of proof.

We hold that the lower court did not err in denying the motion to dismiss count 3 of the indictment.

*The Sufficiency of the Evidence*

Dean gives as reasons why the evidence was insufficient that it did not show that he had no lawful business to pursue or that he was acting in a manner disruptive or disturbing to the normal educational functions of the institution, and that he refused to leave the building.

We think the jury could have properly found, at least by a rational inference from the evidence, that Dean had no lawful business to pursue in the Administration Building at the time he was there. Certainly we cannot say that breaking down doors of the Building to effect entrance, milling around the lobby, removing the directory board, placing it in the middle of the lobby and rearranging the lettering thereon to form the slogans as testified, were constitutionally protected activities. And it would seem that the jury could have fairly found that they were acts disruptive or disturbing to the normal educational functions of the institution. There was direct evidence that Dean refused to leave when requested

---

14. Dean demanded particulars. He asked the court to order the State's Attorney to file a Bill of Particulars (1) describing with specificity the alleged acts which constituted forcible entry, the alleged detainer, the alleged failure to leave the Administration Building and the alleged disorderly conduct; (2) stating the names and addresses of the agents of the Board of Regents described in the indictment. The State answered that the indictment was specific and afforded a fair and reasonable opportunity for Dean to defend himself (names of witnesses were supplied in answer to a motion for discovery). Dean does not now present any question regarding the answer.

and he does not dispute that the request was made by an "authorized employee." That he eventually left is not the point; there was evidence that he refused to leave until "I get through with what I am doing right now," and continued to rearrange the lettering on the directory. Dean conceded in oral argument before us that the question of what he was doing in the Building was one of credibility. As such it was for the jury. *Berlin v. State,* 12 Md. App. 48. The reasons advanced by Dean in urging that the evidence was not sufficient to sustain the conviction under the 3rd count do not lead to the conclusion that the lower court erred in denying the motion for judgment of acquittal.

We hold that the lower court did not err in denying the motion for judgment of acquittal as to the 3rd count of the indictment.

Dean points out in the "Conclusion" section of his brief that he "was only one of many involved in the activity complained of by the State, yet he was singled out as part of a small group, by the University to be charged with these criminal violations." His conduct may be neither excused nor justified because others may have acted unlawfully. Nor did he obtain sanctuary because others were not apprehended, or prosecuted or punished. He was responsible for his conduct, found by a jury of his peers to have been unlawful. We have determined that the convictions were come by properly. He is fairly held accountable. See *Drews v. State,* 236 Md. 349.

*Judgments affirmed; costs to be paid by appellant.*