## THE CITY OF SALISBURY *v.* BANKER'S LIFE COMPANY ET AL.

[No. 768, September Term, 1973.]

*Decided May 24, 1974.*

---

The cause was argued before ORTH, C. J., and THOMPSON and MENCHINE, JJ.

*Walter C. Anderson,* with whom were *Richardson, Rogan, Anderson & Heland* on the brief, for appellant.

*Fulton P. Jeffers,* with whom were *Charles E. Hearne, Jr.,* and *Hearne, Fox & Bailey* on the brief, for appellees.

ORTH, C. J., delivered the opinion of the Court.

The issue in this case is the validity of a resolution of the Council of the City of Salisbury, enlarging the corporate boundaries of the City by the annexation of an area designated as Glen Avenue Annexation No. 2. The Circuit Court for Wicomico County found that the resolution was "invalid and of no effect", and so decreed. We affirm the decree.

## I

The determination of the issue requires judicial interpretation of legislative enactments.[1] Three statutes are material to the issue. The first is Code, Art. 23A, § 19 concerning the power of municipal corporations to enlarge their boundaries. The second is Code, Art. 81, § 9 which provides for exemption of real and personal property from assessment and taxation. The third is Code, Art. 81, § 232B requiring the valuation of exempted property.

Subsection (a) of § 19 of Art. 23A authorizes a municipal corporation of this State to enlarge its corporate boundaries by the annexation of land which is contiguous and adjoining to the existing corporate area. Subsection (b) provides that the proposal for change may be initiated by the legislative body of the corporation through the introduction of a resolution, ". . . but only after the legislative body shall have obtained the consent for the proposal from not less than twenty-five per centum (25%) of the persons who reside in the area to be annexed and who are registered as voters in county elections and from the owners of not less than twenty-five per centum (25%) of the assessed valuation of the real property located in the area to be annexed." [2]

Code, Art. 81, § 9 designates certain real and personal property as exempt from assessment and from State, county and city ordinary taxation. The property exempted includes, under subsection (b) (1), public property, that is, property owned by the United States, the State of Maryland, any of the counties of the State, the City of Baltimore, or any city in the State, and any agency or instrumentality of any of these governments, and, under subsection (e),

---

1. Only judicial review of legislative intent is involved, as distinguished from judicial review of the constitutionality of a statute. See *Magalski v. Maryland Casualty Company*, 21 Md. App. 136, note 2.

2. "The proposal for change also may be initiated by a written petition signed by not less than twenty-five per centum (25%) of the persons who reside in the area to be annexed and who are registered as voters in county elections in the precinct or precincts in which the territory to be annexed is located, and by the owners of not less than twenty-five per centum (25%) of the assessed valuation of the real property located in the area to be annexed." Code, Art. 23A, § 19 (c).

educational property, that is, "Property owned by . . . (2) any nonprofit . . . educational . . . institutions or organizations . . .; when any of such property described above is actually used exclusively for and necessary for . . . educational purposes (including athletic programs and activities of an educational institution) in the promotion of the general public welfare of the people of the State . . . ." The exemption of educational property extends to any property used for educational purposes, which is held by a corporation or association or by trustees for the sole benefit of an educational organization.[3]

Code, Art. 81, § 232B, as amended,[4] provides in pertinent part:

> "Notwithstanding the provisions of § 9 of this article excluding exempt property from assessment for purposes of ordinary taxation and excepting the property of the United States from this section, all real property and any improvements thereon located in the State and exempted from the payment of any ordinary taxes on July 1, 1971 or becoming exempt at any time thereafter by any provisions of law shall be valued and assessed from time to time as may be necessary and as directed by the Director of the Department according to the method prescribed by this article by persons authorized by the Director to perform such valuations. These valuations shall be maintained in the records of the Department and of each county and Baltimore City in which exempt property is located, in the manner required by the Director. None of such valuations shall be included in the total assessment of all property subject to State,

---

3. Ch. 350, Acts 1972, repealed former §§ 8A and 9, enacted in lieu thereof present §§ 9, 9A, 9B, 9C and 9D and renumbered former §§ 9A, 9B and 9C as §§ 9E, 9F and 9G respectively. By § 9 of ch. 350, the Act was applicable to assessments of property for the taxable year beginning 1 July 1973, and ending 30 June 1974. Section 10 provided that, subject to the provisions of § 9, the Act shall take effect 1 July 1972.

4. Section 232B was enacted by ch. 361, Acts 1971, effective 1 July 1971. It was amended by ch. 447, § 1, effective 1 July 1972.

county or city ordinary taxation for the purpose of distribution of State moneys under any provision of law . . . ."

## II

The City of Salisbury is a municipal corporation. On 25 June 1973, its Council, as its legislative body, introduced Resolution No. 171 to enlarge the corporate boundaries by the annexation of an area designated as Glen Avenue Annexation No. 2. The resolution was passed in accordance with the usual requirements and practices applicable to the Council's legislative enactments, receiving final passage and being executed into law on 13 August 1973. On 18 September 1973 four property owners in the area annexed, the appellees herein,[5] brought an action in the Circuit Court for Wicomico County under the Uniform Declaratory Judgments Act.[6] Their claim, as it was ultimately pursued, was that the resolution was invalid because the Council had not obtained the consent of the owners of 25% of the assessed valuation of the real property located in the area to be annexed as required by Art. 23A, § 19 (b). This was so because the Council included the Wicomico County Board of Education (the Board) as a consenting owner of real property located in the area, whereas, they urged, the property owned by that Board was exempt from assessment and ordinary taxation under Art. 81, § 9. The City of Salisbury conceded that the property of the Board was included in arriving at more than 25% of the assessed valuation of the real property involved, and that the Board was counted as a consenting owner, but claimed that this was proper.

At the trial it was stipulated that if the property owned by the Board were included, there was consent by the owners of

5. Banker's Life Company, Mae Smith Lank, Salisbury Shopping Center, Inc., and John L. Smith and Emily C. Smith, his wife.

6. Code, Art. 31A, § 2, provides: "Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity, arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

the required 25% of the assessed valuation of the real estate, but that if the property owned by the Board were excluded, then the required consent was not obtained. The judge below held that the property of the Board was not properly includable in figuring the percentage of the assessed valuation of the real property located in the area to be annexed. He said:

> "I do not know the purpose of Section 232B of Article 81, but obviously it is not for the purpose of taxation, but is for the purpose of maintaining a record of the value of property.

> "It does not appear to be within the legislative intent of Section 19 of Article 23A that owners of property which do not, and will not, pay any taxes to the city are intended to be included with those who determine whether or not they should be a part of the city .... I am of the opinion that the intention of Section 19 of Article 23A is that the twenty-five per centum must be of value which is on the assessment roll for the purpose of taxation and that, therefore, the property of the County Board of Education should not be included."

It was the ruling of the court that there had not been compliance with Art. 23A, § 19, and "the annexation resolution is thereby void." It entered a decree on 1 November 1973 declaring the resolution "to be invalid and of no effect."

### III

The City concedes that prior to the effective date of Art. 81, § 232B, the property of the Board was properly to be excluded in arriving at the consent spelled out by Art. 23A, § 19 (b), because such property was then subject neither to assessment nor taxation. But, it urges, the enactment of § 232B placed the matter in a different light. Although § 232B did not subject the Board's property to taxation, it did require that it be "valued and assessed". Art. 23A, § 19 speaks in terms of "assessed valuation" with regard to the

property owned by those from whom consent must be obtained. Therefore, the City concludes, because the Board's property is now to be "valued and assessed", it has an "assessed valuation" and is within the contemplation of Art. 23A, § 19 (b), properly to be included in determining whether the required consent had been obtained. We think, as did the lower court, that the issue presented is to be determined by ascertaining the legislative intent in enacting Art. 81, § 232B.

The City would not have us look to legislative intent. It argues that Art. 23A, § 19 (b) clearly prescribes that it is the "assessed valuation" of real property that is to be considered, and that Art. 81, § 232B clearly requires property exempt under Art. 81, § 9 to be valued and assessed. There being no language or terminology used in the statute which is unclear or ambiguous, the "plain meaning rule" precludes us, it asserts, from seeking legislative intent and purpose. *Giant v. State's Attorney*, 267 Md. 501; *Perdue v. State Department of Assessments and Taxation*, 264 Md. 228. We do not see it quite that way. Although "where the language of the statute is clear and explicit, and expresses a definite and sensible meaning, the court cannot disregard the mandate of the Legislature and insert an exception, where none has been made by the Legislature, for the sake of relieving against hardship or injustice", it is equally true that "[w]here there is ambiguity in the provisions of a statute, or *the intention of the Legislature is doubtful*, the court may look to the consequences . . . ." (emphasis supplied) *Schmeizl v. Schmeizl*, 186 Md. 371, 375. We think that the application of Art. 81, § 232B to Art. 23A, § 19 (b) is not clear and unambiguous, and that we are obliged to look to the legislative intent and to the consequences.

It is plain, and in accord with the concession of the City, that when Art. 23A, § 19 was enacted and amended from time to time, it contemplated, in speaking of "the assessed valuation of the real property located in the area to be annexed", only property subject to taxation, for there was then no requirement that property exempt from taxation be

valued or assessed.[7] It was only property on the tax assessment rolls which was available to provide a basis for ascertaining whether the consent had been obtained by the owners of not less than 25% of the assessed valuation of the real property. It was also obvious, and again in accord with what we understand is the view of the City, that § 232B, as originally enacted,[8] and as re-enacted with amendments,[9] did not affect the tax exempt status of real property under the provisions of Art. 81, § 9. Such property was fully exempt from ordinary taxation after the passage of § 232B just as it was before that statute was enacted. The effect of the valuation of tax exempt property was expressly set out in the original statute and perpetuated in the 1972 re-enactment: "None of such valuations shall be included in the total assessment of all property subject to State, county or city ordinary taxation for the purpose of distribution of State monies under any provision of law." In other words, § 232B provided simply that exempt property will be valued as the Department of Assessments and Taxation directs, and that the valuations will be maintained separately, not affecting any assessable base on which State aid is computed. Clearly, § 232B did not make real property which was formerly tax exempt, subject to ordinary taxation.

The *Report to the General Assembly of 1971* by the

---

7. Art. 81, § 232B was enacted subsequent to the enactment of Art. 23A, § 19 and its various amendments. See Acts 1955, ch. 423; Acts 1957, chs. 196, 197, 526; Acts 1961, ch. 314; Acts 1967, ch. 410, § 1.

8. The title to ch. 361, Acts 1971, described it as an Act to add a new section 232B to Article 81 "to require the State Department of Assessments and Taxation to value all property in the State which is exempt from State and local taxation, with exceptions, to provide for the manner of making such valuations and the keeping of records of such valuations, and to provide for the effect of these valuations on the distribution of certain State monies."

9. When the statute was repealed and re-enacted with amendments by ch. 447, Acts 1972, the title declared that it was "to provide for the continuing valuation and assessment of certain tax exempt property by the State Department of Assessments and Taxation and for the manner of such valuation and assessment, and to provide for the appointment of the necessary personnel to perform the duties, and to correct errors therein."

Section 1 of ch. 447 made no changes which bear on the point herein discussed. Section 2 repealed § 2 of ch. 361, Acts 1971, which provided that it was the intention of the Legislature that the valuation of tax exempt property be completed, "within budgetary limitations", by 1 January 1973, so that such valuation would be a continuing process.

Legislative Council of Maryland explains why S.B. 27 (§ 232B) was offered. It states, at 253:

"This legislation offered by the Committee on Taxation and Fiscal Matters is related to the property tax rearrangement legislation. Although it arose from 1970 bills requiring the making of payments-in-lieu of taxes for some kinds of tax exempt property, the Committee found that it was impossible to consider those bills properly because tax exempt property is not valued and assessed. The Committee feels that the lack of any valuation for tax exempt property is an oversight in the State's property and assessment laws which needs to be corrected. This information will provide a basis for consideration of payments-in-lieu proposals and also for evaluation of property tax exemptions." [10]

The only conclusion reasonably to be drawn from the language of § 232B and its history is that the General Assembly had no intention whatsoever that the Act in any way alter the requirements for the annexation of real property by a municipal corporation. Before the passage of § 232B, qualification to give consent was limited to owners of property subject to taxation in the area proposed to be annexed. We believed that § 232B did not change this. Looking to the consequences, we believe that the Legislature never departed from an intent that only those who were to bear the financial burdens of a city government by the payment of real property taxes were to be allowed a voice in the annexation of real property to the municipal corporation.

We find that the Wicomico County Board of Education, as an owner of tax exempt property, was not to be included in

10. Referred to the Finance Committee of the Senate, S.B. 27 (§ 232B) received a favorable committee report and was passed unanimously in the Senate on the third reading, 37-0. It passed the third reading in the House 97-0. The amendments in 1972 by S.B. 694 had similar ease of passage in both House and Senate, being unanimously passed on third reading 36-0 and 110-0, respectively.

ascertaining whether there had been obtained the consent of the owners of not less than 25% of the assessed valuation of the real property located in the area to be annexed.

## IV

The City also contends that "the procedures of annexation were carried out by [it] under color of authority so that mere irregularities in procedure would not allow a private individual the right to challenge the annexation." The right of appellees to challenge the annexation was not tried and decided below. The point is not properly before us and we do not entertain it. Maryland Rule 1085. We are constrained to note, however, that we do not believe that the failure to obtain the consent of real property owners as required by the statute is a mere irregularity in procedure. The statute is explicit. The proposal for change may be initiated by resolution "only after the consent for the proposal", as specified, has been obtained.

## V

By the exclusion of the Wicomico County Board of Education the consent to the annexation from the owners of 25% of the assessed valuation of the real property located in the area to be annexed was not obtained. Therefore, the resolution of the Council of the City of Salisbury was void.

*Decree of the Circuit Court for Wicomico County of 1 November 1973 affirmed; costs to be paid by appellant.*