# ALFRED MAGALSKI *v.* MARYLAND CASUALTY COMPANY

[No. 744, September Term, 1973.]

*Decided April 25, 1974.*

The cause was argued before ORTH, C. J., and MOORE, J., and HOWARD S. CHASANOW, Associate Judge of the District Court of Maryland for District 8, specially assigned.

*Robert C. Verderaime,* with whom were *Verderaime & DuBois* on the brief, for appellant.

*Robert E. Powell,* with whom were *Smith, Somerville & Case* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

## I

Once again we are urged by an unhappy litigant to encroach on the legislative prerogative. Once again we decline to do so. Even in those instances where the result sought appears salutary, we are cautious not to enact legislation under the guise of judicial review of legislative acts, for in so doing the fundamental constitutional concept of the separation of powers is eroded. Fundamentally, the office of a judge is *jus dicere,* not *jus dare*; the judge ". . . is not delegated to pronounce a new law, but to maintain and expound the old one." 1 Blackstone, *Commentaries on the Law,* 69.[1] And, as we observed in *State v. Brown,* 21 Md. App. 91, there are some matters which, in any event, are best within the ambit of the legislative branch of our

---

[1] "The judicial function is that of interpretation; it does not include the power of amendment under the guise of interpretation." *West Coast Hotel Co. v. Parrish,* 300 U. S. 379, 404 (1937).

government "because expression and weighing of divergent views, consideration of potential effects, and suggestion of adequate safeguards, are better suited to the legislative forum." [2]

## II

What happened in the case before us was that Maryland Casualty Company (the Company), a stock insurance company, issued a contract of insurance under which, "in consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy", it agreed, among other things, with E. Stewart Mitchell, Inc. and E. Stewart Mitchell (Mitchell) to pay on behalf of Mitchell as the insured, "all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury or . . . property damage to which this insurance applies,[3] caused by an occurrence [4] and arising out of the ownership, maintenance or use of any automobile." One of the conditions to which this "General Liability-Automobile" insurance policy was subject was spelled out as condition number 5 under the heading "Action Against Company". It declared:

"No action shall lie against the company unless, as a condition precedent thereto, there shall have

2. We find a clear distinction between judicial review of the constitutionality of a statute and the judicial review of legislative intent. In a judicial review of constitutionality, the judgment is final, subject to judicial overruling or formal constitutional amendment. Judicial review of legislative intent, that is the judicial construction of a constitutional statute, does not preclude the enacting body from rejecting the judicial judgment through clarifying legislation. "The locus of finality differs in the two situations. With the former, it is in the judiciary; with the latter, it is in [Legislature]." *Three Little Words and What They Didn't Seem to Mean*, by Frank R. Strong, American Bar Association Journal, volume 59, page 29, et seq. (January 1973). See Strong, *Judicial Review: A Tri-Dimensional Concept of Administrative-Constitutional Law*, 69 W. Va. L. Rev. 111 and 249 (1967); Kauper, *The Supreme Court: Hybrid Organ of State*, 21 S.W.L.J. 573 (1967). See *Kirstel v. State*, 13 Md. App. 482, *cert. den.*, 264 Md. 749; *State v. Siegel*, 13 Md. App. 444, *affirmed*, 266 Md. 256; *Anderson v. State*, 12 Md. App. 186, *cert. den.*, 263 Md. 709.

3. There is a notation on the policy that "Policy Limits have been removed."

4. The policy defined "occurrence" to mean "an accident, . . . ."

been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the insured to determine the insured's liability, nor shall the company be impleaded by the insured or his legal representative. Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder."

The "Comprehensive Automobile Liability Insurance Coverage Part" of the policy gave the Company the right and imposed on it the duty "to defend any suit against insured seeking damages on account of such bodily injury or property damage even if any of the allegations of the suit are groundless, false or fraudulent . . . ." It further provided that the Company "may make such investigation and settlement of any claim or suit as it deems expedient. . . ."

The policy was in effect on 17 June 1971 when a tractor-trailer truck owned by Mitchell, and operated by its employee, was involved in an accident with an automobile owned and operated by Alfred Magalski. Magalski made a claim against Mitchell for the damage to his automobile. There was no claim for bodily injury. The Company made an investigation and denied liability. Magalski brought an action in the District Court of Maryland. Trial was had on 21 September 1972, resulting in a verdict in favor of Magalski in the stipulated amount of the damages, $419.83, plus court costs of $9.00. The Company thereupon promptly tendered payment of the judgment.

Magalski, despite his victory, apparently felt aggrieved by the trouble and expense to which he had been put to obtain it. On 16 November 1972, he filed an action in the Baltimore City Court against the Company claiming $75 compensatory damages and $500,000 punitive damages. He averred that the accident was caused by the negligence of Mitchell with no contributory negligence on his part. The circumstances as set out in his Declaration were that he was driving in a westerly direction on Boston Street, a boulevard in Baltimore City. When he approached the intersection of the boulevard with Conkling Street, Mitchell's vehicle, travelling on Conkling Street, failed to observe a stop sign, not stopping or yielding right of way, but proceeding from the unfavored highway into the favored highway. It struck the Magalski automobile, damaging it. There was no dispute as to the amount of the damages. Magalski asserted that the Company was obliged under its policy with Mitchell and by the provisions of Code, Art. 48A, § 384B to pay him the amount of the damages to his automobile, and that the failure to do so until judgment was rendered was "arbitrary, capricious and done deliberately with an intent to deprive [him] of payment for his damage when [the Company] knew that there was no legal reason for its refusal to pay . . . ." He was forced to obtain legal counsel to perfect his claim and suffered damages "because of the malicious, illegal and arbitrary acts of [the Company] in refusing to pay the property damage claim . . . ." The Company demanded the production of the insurance policy. Md. Rule 326. Magalski resisted but eventually complied. The Company then demurred to the Declaration. Among the reasons given for the demurrer were that the Company had "no contractual obligation running to or for the benefit" of Magalski and that under the Maryland law there was no cause of action for damages under the allegations in the Declaration. On 17 October 1973 the demurrer was sustained without leave to amend and judgment absolute was entered in favor of the Company for the costs of suit.[5] See Md. Rule 345 e; *Golden Hill Dev. Co. v. Unger*, 267 Md. 26. Magalski appealed.

5. The demurrer was first sustained by order of 12 October 1973, and

To Magalski the question on appeal is:

> "Does a cause of action arise against the insurer of a tortfeasor in favor of one who sustains property damage to his automobile, (the repair cost for which is admitted to be fair and reasonable), when it is alleged that the refusal of the insurer to pay the damage was unlawful, arbitrary, capricious, deliberate and done with malice, and that the insurer had no defense to the tort? "

As a corollary to the question, he asks: "Do the provisions of Article 48A, Section 384B create any such cause of action? " The Company poses the problem a little differently. It inquires:

> "Can one not a party to an insurance contract maintain an action against the insurer of an alleged tortfeasor for refusing to pay a claim before its insured is determined to be liable? "

In the posture of the case before us, the answer to all three questions is "no".

### III

The General Assembly, patently recognizing that accidents involving motor vehicles frequently result in both bodily injury and damage to property, and no doubt aware that the monetary equivalent of property damages is generally more readily ascertainable and less in amount than damages accruing from bodily injuries, with respect to which pain and suffering and loss of consortium may play a significant part, enacted ch. 215, Acts 1966, codified as Art. 48A, § 384A, concerning, in the words of the subtitle to the section, "Settlement of property damage claims by automobile liability insurer". The Act provided:

---

judgment absolute entered the same date. Counsel for Magalski wrote the court under date of 15 October: "Frankly, I would prefer that the order be without leave to amend so that I can file the appeal promptly without filing an amended declaration and having to have another hearing. I would not change the allegations in any amended declaration." The court complied with the request.

"No settlement made under a motor vehicle liability insurance policy of a claim against any insured thereunder arising from any accident or other event insured against for damage to or destruction of property owned by another person shall be construed as an admission of liability by the insured, or the insurer's recognition of such liability, with respect to any other claim arising from the same accident or event; nor shall such settlement preclude any claim for bodily injury or other claims not within the scope of such settlement."

Four years later the General Assembly went a step further. The 1966 Act having paved the way, it enacted ch. 682, Acts 1970, codified as Art. 48A, § 384B:

"No claim for damage to property resulting from a motor vehicle accident shall be denied or payment therefor delayed because the person who is entitled to payment or any other person has a claim pending for bodily injury which may have arisen from the same or any other accident. Whenever an insurer has the appropriate motor vehicle coverage for the party liable and there is no significant dispute as to either the liability for the payment of the full property damages or the amount of the monetary equivalent of these damages, then the amount payable shall immediately be due and owing and shall promptly be paid by the insurer."

It is the latter act on which Magalski now relies to justify the action filed by him.

Magalski thinks the Act is a legislative declaration of a "standard of conduct to be followed by insurance companies." That is a fair characterization. It is quite apparent that the Legislature meant to encourage the settlement of property damage claims expeditiously. But we think the focus was on the settlement of such claims when there was a pending claim for bodily injury. Section 384A, having made clear that settlement of a property damage

claim was neither an admission by the insurer or insured of
liability with respect to any claim for bodily injury or other
claim arising from the accident, nor a bar by the injured
party to make any such claim, the Legislature declared in §
384B that a claim for property damage shall not be denied or
payment therefor delayed because of a pending bodily injury
claim. The second sentence of the section prescribed the
conditions under which a property damage claim "shall
immediately be due and owing and shall promptly be paid by
the insurer", namely whenever (1) an insurer has the
appropriate motor vehicle coverage, and (2) there is no
significant dispute as to either (a) liability for, or (b) the
amount of, property damages. We believe that § 384B must
be read as an entirety and in the light of § 384A. In other
words, the second sentence of § 384B is not to be divorced
from the first sentence; the provisions with respect to when
a property damage claim shall be paid are to be considered
in connection with the provisions with respect to when it
may not be denied or payment delayed. We find the clear
legislative intent to have been that § 384B shall apply only
when there is a claim pending for bodily injury. For us to
conclude otherwise would be an exercise of judicial
legislation in the guise of statutory interpretation.[6]

As there was no claim pending for bodily injury, Code,
Art. 48A, § 384B was not in any event applicable to
Magalski's claim for property damage. The statute does not
support the action brought by him.

In view of our construction of § 384B, we do not reach the
question whether that statute creates a cause of action as
brought in this case when there is a claim pending for bodily
injury. We observe, however, that the Legislature has

6. The history of ch. 682, Acts 1970, was unremarkable. As Senate Bill
717 it went through the Senate and the House without controversy or
amendment. It was passed in the Senate 35 to 0 and in the House 93 to 9.
See Senate Journal, 1970, pp. 1063, 1170-71, 1584 and House Journal, 1970,
p. 1970.

The title to the Act is not contrary to our view. The Act was "to provide
for the compulsory payment of property damage claims arising from motor
vehicle accidents when there is no dispute as to the liability therefor or
amount thereof regardless of whether an injury claim or suit is pending."
We note that the Act itself speaks in terms of "no significant dispute."

144

recognized the general rule that it is upon judgment against an insured after trial that the liability of an insurer is established. Code, Art. 48A, § 481, prescribes that ". . . liability policies are only required to afford a direct action by an injured party against an insurer after a judgment has been obtained against the assured, which is unsatisfied after execution." [7] *Gorman v. St. Paul Fire & Marine Ins. Co.*, 210 Md. 1, 5, citing and quoting with approval *Tullgren v. Jasper*, 27 F. Supp. 413, 418 (D. Md. 1939). See *Complaint of Harbor Towing Corp.*, 335 F. Supp. 1150 (D. Md. 1971).[8] We note further that prior to 1 January 1973 an automobile public liability and property damage policy was deemed to meet certain requirements enumerated in Code, Art. $66^1/_2$, § 7-324 (formerly Code, Art. $66^1/_2$, § 131) under the subtitle "Financial Responsibility and Unsatisfied Claim and Judgment Fund", if it, among other things, specified, as set out in § 7-324 (c) (6) (vi), formerly § 131 (a) (6) (F):

"That the liability of the insurance carrier shall become absolute whenever loss or damage included in the policy occurs, and the satisfaction by the insured person of a final judgment for the loss or damage shall not be a condition precedent to the right or obligation of the carrier to make payment on account of the loss or damage;

7. Code, Art. 48A, § 481 was § 83 in former Art. 48A of the 1957 Code and § 80 of Art. 48A in the 1951 Code. It reads:

"No liability insurance policy issued in this State shall contain any requirement for the payment of liability or loss under the policy, by the assured, but all such policies shall provide in substance that the bankruptcy or insolvency of the assured shall not release the insurer from liability; that if an execution upon any final judgment against the assured is returned unsatisfied, in whole or in part, in an action brought by the injured or by another person claiming, by, through, or under the injured, then an action may be maintained by the injured, or by such other person against the insurer under the terms of the policy for the amount of any judgment recovered in such action, not exceeding the amount of the policy, and every such policy shall be construed to so provide, anything in such policy to the contrary notwithstanding."

8. A provision in the insurance policy may eliminate one of the steps required of an injured party by the statute by omitting the requirement of unsatisfied execution. *Bass v. Standard Acc. Ins. Co.*, 70 F. 2d 86 (4th Cir. 1934).

"Provided that no suit shall be brought against the insurance carrier until 30 days after the entry of a final judgment against the insured person for the loss or damage." [9]

In *Citizens Casualty Company of New York v. Allied Mutual Insurance Company,* 217 Md. 494, the Court observed that, although there were some differences between what was then § 131 (a) (6) (F) of Art. $66^{1}/_{2}$ and § 481 of Art. 48A, "there is also considerable similarity between the rights of injured third parties to sue the insurer under these two sections." At 504. It found that each statute had a remedial purpose, which was primarily to protect the public. It was the view of the Court that the "absolute liability" under § 131 was to the members of the public who have suffered by reason of the insured's action, a view which it found reinforced by the coupling of the "absolute liability" directly with the clause stating that the satisfaction of a judgment by the insured person is not a condition precedent to the obligation of the insurer to make payment to the injured party. In other words, the insolvency or financial irresponsibility of the insured does not release the insurer from liability to injured third parties. A like provision is contained in § 481. We point out that even in the face of the primary purpose of the statute to protect the public, both envisioned a "final judgment" against the insured before the injured claimant could bring an action against the insurer.

We think that the design of Art. 48A, § 384B also was remedial, and that its purpose was to protect the public. But whether it goes so far, when a claim for both bodily injury and property damage are made, as to afford a direct action against an insurer before the responsibility of the insurer to its insured is determined by a judgment, or whether it empowers a claimant to bring an action against an insurer, either before or after such judgment is obtained by the claimant against the insured, to recover damages by reason

9. Acts 1972, ch. 73, effective 1 January 1973 repealed §§ 7-101 to 7-635 and enacted in lieu thereof new §§ 7-101 and 7-102 under the subtitle "Required Security." Provisions comparable to the old § 7-324 do not appear in the new sections.

of the failure of the insurer to pay property damages suffered by the claimant, are questions which we defer until they are properly before us.

## IV

Magalski suggests that the Company was obliged to pay him for the damage to his automobile under its policy with Mitchell. The Court of Appeals had found it plain under the cases decided by it that "the right of the injured claimant to collect from the insurer of the one who harmed him derives from the contract right of the tortfeasor to have the insurer pay for him within the policy limit what otherwise he would be liable to pay. As the third party beneficiary of the insurance contract, the claimant stands in the shoes of the insured wrongdoer and vis-a-vis the insurer his rights are not greater than those of the insured's." *Travelers Insurance Company v. Godsey,* 260 Md. 669, 674. See *Shillman v. Hobstetter,* 249 Md. 678, 690. The rights of the insured are determined, in general, by the terms of the insurance policy. It may contain any agreement, provision or stipulation not in conflict with or contrary to law.[10] And, of course, a statute may dictate that a policy shall be construed to contain the provisions of the statute, as does Code, Art. 48A, § 481. See note 7, *supra.*

Under the policy here, as we have indicated, the Company agreed to pay on behalf of the insured "all sums which the insured shall become legally obligated to pay as damages . . . ." The policy prohibited any action against the Company, unless as a condition precedent, the Company's obligation to pay had been finally determined either by judgment against the insured after actual trial or by written agreement of the Company, the insured and the claimant. Thus, under the policy, the Company was obligated to pay the amount of the damages to Magalski's vehicle, but not until after the judgment was obtained by Magalski against the insured. When judgment was rendered, that the

---

10. Code, Art. 66½, § 7-324 (d) (5) expressly so provided with respect to a policy of insurance offered as proof of financial responsibility. See note 9, *supra.*

Company tendered full payment of it is admitted. It is apparent, that under the terms of the policy, and particularly condition 5, which was in full conformity with Code, Art. 48A, § 481, the action filed by Magalski which is the subject of this appeal was in nowise authorized, and, in fact, was prohibited.

> *Order of 17 October 1973 sustaining the demurrer of Maryland Casualty Company without leave to amend affirmed; costs to be paid by appellant.*