643 A.2d 385

Mariette CUPIDON, et al.

v.

Jean ALEXIS.

No. 38, Sept. Term, 1992.

Court of Appeals of Maryland.

June 27, 1994.

Howard W. Simcox, Jr. (Law Offices of Karen L. Sussman, Chartered, both on brief), College Park, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI and BELL, JJ.

ELDRIDGE, Judge.

We issued a writ of certiorari in this case to consider whether a draft, issued by a joint tortfeasor's liability insurer on behalf of the insured, containing language on its face reading "final settlement of any and all claims arising from bodily injury caused by accident on 01/17/91," and deposited by the payee into her bank account, operates as a release by the payee of claims against all other alleged joint tortfeasors.

On January 17, 1991, the plaintiffs, Mariette and Victane Cupidon, were passengers in a car driven by the defendant, Jean Alexis.[1] As Alexis traveled southbound on New Hampshire Avenue in Hyattsville, Maryland, a car driven by Darn Lok turned left immediately in front of Alexis's car and collided with it, causing injuries to Alexis and both of the Cupidons. The Cupidons and Alexis subsequently filed personal injury claims with Lok's insurance carrier, Allstate Insurance Company.[2] After investigating the cause of the accident and the nature of the injuries, Allstate agreed to pay to the claimants a total of $40,000, the maximum liability coverage per occurrence under Lok's policy. The claimants, in turn, agreed to divide the proceeds in the following manner:

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. The car driven by Alexis was owned by Jean Cupidon, the brother of the plaintiffs. Jean Alexis, as a permissive driver of the car, was an additional insured under the owner's insurance policy issued by Allstate Insurance Company.

2. Allstate, therefore, insured both vehicles involved in the accident.

$10,000 to Alexis, $10,000 to Victane Cupidon, and $20,000 to Mariette Cupidon.[3]

Allstate issued drafts to the three claimants in the agreed upon amounts. The face of each draft specified that Darn Lok was the insured and contained the words "final settlement of any and all claims arising from bodily injury caused by accident on 01/17/91." Along with the drafts, Allstate sent each of the claimants a "Release of All Claims" form purporting to "release and forever discharge Darn Lok and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigns, from any and all claims...." Alexis executed the release and returned it without modification. Victane and Mariette Cupidon modified their respective releases by inserting in handwriting the following: "This release does not prevent me from bringing an action against Jean Alexis." They executed the documents as modified and mailed them to Allstate on March 28, 1991. On that same day, each settlement draft was deposited into a bank account.

On April 25, 1991, Mariette and Victane Cupidon brought the present tort action against Jean Alexis in the Circuit Court for Prince George's County, seeking personal injury damages based upon the alleged negligent operation of the motor vehicle. Jean Alexis, contending that the prior settlement and release of Darn Lok precluded any further proceedings against him, filed a motion for summary judgment. In their opposition to the summary judgment motion, the plaintiffs maintained that the modified release was the controlling document because Allstate, by failing to object to the change, accepted the modified terms. The plaintiffs additionally argued that the language on the drafts released Darn Lok only.

The trial court held that the language on the settlement drafts effectively "releases all claims that might be made by any of the settling parties arising out of injuries they received in the subject accident." The trial court also held that once

---

3. It appears that the $40,000 under Darn Lok's policy was insufficient to cover even the plaintiffs' medical expenses incurred up to that time.

the parties had negotiated the drafts containing the release language, they could not rely upon the modifications made to the separate release documents. Accordingly, based on the language on the drafts, the trial court granted the defendant's motion for summary judgment. The Cupidons took an appeal to the Court of Special Appeals. Before the case was argued in that court, we issued a writ of certiorari.

The Cupidons make two arguments on appeal. First, they argue that the trial judge erred in failing to consider the modified releases. They contend that the conduct by and negotiations between the parties showed an understanding that Darn Lok was the only tortfeasor intended to be released. Alternatively, they argue that, even if the trial judge were correct in discounting the modified releases, the language on the drafts was insufficient to release anyone but Darn Lok.

The thrust of Alexis's argument is that, because of the language inscribed on the drafts, "each check itself constitutes a written release. By indorsing the checks with the knowledge of the release provisions thereon, the [Cupidons] executed general releases of all remaining claims, including those they might have brought against [Alexis]." (Appellee's brief at 4). Alexis insists that the language on the drafts does not mean " 'any and all claims against Darn Lok' " but "covers *any and all claims*" against another tortfeasor as well (*id.* at 4–5). Alexis also contends that the plaintiffs' modification of the separate release documents was not accepted by the insurer and that the course of conduct among the parties did not disclose an understanding to release only Darn Lok.

We need not decide, based upon the negotiations and conduct of the parties as disclosed by the record, if there was a triable issue as to whether the parties had reached a mutual understanding about the scope of the separate releases. We shall assume arguendo, as the trial judge held, that there was no meeting of the minds as to the type of release to be executed and that Allstate did not acquiesce in the modified terms of the release forms. We do, however, find merit in

plaintiffs' alternate argument that the language on the face of the drafts was insufficient to release Alexis.

The controlling principles regarding the release of a joint tortfeasor are set forth in the Maryland version of the Uniform Contribution Among Joint Tortfeasors Act, Maryland Code (1957, 1994 Repl.Vol.), Art. 50, §§ 16–24 (hereinafter referred to as the Uniform Act). Section 19 provides in pertinent part that "[a] release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides. . . ."

Although "joint tortfeasor" is defined in § 16 of the Uniform Act, "release" is not.[4] *See Maryland Lumber Co. v. White*, 205 Md. 180, 198–199, 107 A.2d 73, 80 (1954) ("The statute does not define the term 'release.' In cases prior to its enactment, a covenant not to sue and an order 'agreed and settled' were treated as releases. . . . We do not think that the statute narrows the meaning of the term").

This Court has not previously considered whether language on the face of a check or draft, similar to that here, can constitute a release within the meaning of the Uniform Act.[5] Dean Prosser described a release as "a surrender of the cause of action." W. Prosser, *The Law of Torts* § 49, at 301 (4th ed. 1971).[6] Under this definition, it would seem that wording on a

---

**4.** Section 16 defines "joint tort-feasors" as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Code (1957, 1994 Repl.Vol.), Art. 50, § 16. *See generally Montgomery County v. Valk*, 317 Md. 185, 562 A.2d 1246 (1989); *Morgan v. Cohen*, 309 Md. 304, 523 A.2d 1003 (1987); *Peters v. Butler*, 253 Md. 7, 251 A.2d 600 (1969); *Swigert v. Welk*, 213 Md. 613, 133 A.2d 428 (1957); *Sinelli v. Ford Motor Co.*, 810 F.Supp. 668 (D.Md.1993), aff'd, 7 F.3d 226 (4th Cir.1993).

**5.** *See*, however, *McLain v. Pernell*, 255 Md. 569, 570–571, 258 A.2d 416, 417 (1969) (a full release, separately signed and under seal, was set forth on the back of a draft).

**6.** The full passage from Prosser is as follows:

check or draft can amount to a release. Moreover, the parties in the case at bar agree that the particular language on the drafts issued on behalf of Darn Lok made each draft a release and, when endorsed, was sufficient to release Darn Lok from further liability. Finally, other jurisdictions take the view that language on a check or draft similar to that in this case can be sufficient to constitute a release. *See, e.g., Flewellen v. Atlanta Casualty Co.*, 250 Ga. 709, 715, 300 S.E.2d 673, 678 (1983); *Yeager v. Poole Truck Lines, Inc.*, 162 Ga.App. 803, 803–804, 293 S.E.2d 64, 65 (1982); *Watson v. Hamil*, 122 Ga.App. 120, 121–122, 176 S.E.2d 276, 278 (1970); *Grohusky v. Atlas Assurance Co.*, 195 Kan. 626, 630–631, 408 P.2d 697, 702 (1965); *O'Quinn v. Kansas City S. R.R.*, 442 So.2d 1317, 1319 (La.Ct.App.1983); *Gitre v. Kessler Prod. Co.*, 387 Mich. 619, 623–624, 198 N.W.2d 405, 407–408 (1972); *DMI Design & Mfg., Inc. v. ADAC Plastics, Inc.*, 165 Mich.App. 205, 208, 418 N.W.2d 386, 387 (1987); *Colonial Life & Accident Ins. Co. v. Cook*, 374 So.2d 1288, 1290 (Miss.1979); *Miller v. Draper*, 34 Ohio Misc. 11, 12–13, 295 N.E.2d 438, 440 (1972); *Berry v. Guyer*, 482 S.W.2d 719, 720 (Tex.Civ.App.1972).

■ Therefore, we conclude that a release can be embodied in language inscribed on the face of a draft or check, that the language on the drafts in this case was sufficient to constitute a release, and that the endorsements of the drafts released Darn Lok from liability. Consequently, the dispositive issue is whether the trial court erred in holding that the language on the drafts released the other joint tortfeasor. This issue in

---

"There is a genuine distinction between a satisfaction and a release. A satisfaction is an acceptance of full compensation for the injury; a release is a surrender of the cause of action, which may be gratuitous, or given for inadequate consideration. Releases at common law were under seal, which disposed of any possible dispute as to the adequacy of consideration. Such a release to one of two tortfeasors who had acted in concert necessarily released the other, since there was in the eyes of the law but one cause of action against the two, liable for the same acts, which was surrendered. But as to independent wrongdoers, not acting in concert, who were liable for the same loss, there seems to be no reason to conclude that a release of one would release the others, except in so far as it was based upon actual satisfaction of the claim."

turn depends upon the proper interpretation and application of § 19 of the Uniform Act which, as previously mentioned, states that the release of one joint tortfeasor "does not discharge the other tort-feasors unless the release so provides."

In *Martinez v. Lopez,* 300 Md. 91, 102, 476 A.2d 197, 202 (1984), Judge Rodowsky for the Court pointed out that § 19 of the Uniform Act "changes the common law so that no type of release of one joint tortfeasor discharges all." Referring to C. Gregory, *Contribution Among Tortfeasors: A Uniform Practice,* 1938 Wis.L.Rev. 365, 392, Judge Rodowsky went on to observe that § 19 "protects the plaintiff's right to sue other tortfeasors from an unintended release effected at common law by a release given to one joint tortfeasor." 300 Md. at 105, 476 A.2d at 204. Thus, the language on the drafts, regardless of how it is categorized, does not release another tortfeasor unless the language so states.

In contending that the "any and all claims" language on the drafts released tortfeasors other than Darn Lok, the defendant Alexis relies on *Peters v. Butler,* 253 Md. 7, 251 A.2d 600 (1969). *Peters* involved a release given by the plaintiffs to one tortfeasor, which contained language stating that the plaintiffs also released " 'all other persons, firms or corporations liable or who might be claimed to be liable ... on account of all injuries, known and unknown ... which have resulted or may in the future develop' from the accident," and which stated "that it was executed 'for the express purpose of precluding forever any further or additional claims....' " 253 Md. at 9, 251 A.2d at 601. This Court in *Peters,* relying on its earlier decision in *Pemrock, Inc. v. Essco Co.,* 252 Md. 374, 249 A.2d 711 (1969), held that the language of the release was sufficient to release other joint tortfeasors within the meaning of § 19 of the Uniform Act. In *Pemrock, Inc. v. Essco Co., supra,* 252 Md. at 376, 249 A.2d at 712, relied on in *Peters,* the release contained language which released " 'all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages,' " etc. As this Court recently pointed out in *Morgan v.*

*Cohen,* 309 Md. 304, 319, 523 A.2d 1003, 1010 (1987), "[t]he release to the insurer [in *Pemrock* ] certainly was unambiguous in releasing all others."

The releases in the *Peters* and *Pemrock* cases were much more detailed and quite different from the language on the drafts in the present case. In addition to the language referring to "any and all claims" (*Pemrock*) or "additional claims" (*Peters* ), the releases involved in those two cases released "all other persons." It was the language referring to "all other persons" on which this Court relied in holding that the documents did provide for the release of other tortfeasors within the meaning of § 19 of the Uniform Act. *Peters,* 253 Md. at 10, 251 A.2d at 602 (pointing out that the release of all other persons was a "release to all mankind" and referring to "various cases holding that a release of 'all other persons' did release a joint tortfeasor"). *See also Pemrock,* 252 Md. at 380, 249 A.2d at 714 (the "literal, plain, unambiguous words acquitted and discharged forever not only New Castle but all other persons, firms, corporations, associations and partnerships").

In the case at bar, there was no language on the drafts referring to other persons or the equivalent. The only tortfeasor mentioned on the drafts was Darn Lok. The drafts contained no general language referring to categories of possible tortfeasors. The drafts clearly released "all claims" against Darn Lok but were silent with respect to other tortfeasors.

As previously mentioned, the *Peters* case cited several authorities supporting the position that a reference to "all other persons" in a release does provide for the release of other tortfeasors within the meaning of § 19 of the Uniform Act. There are also cases in some other jurisdictions holding that, if another tortfeasor is to be released, § 19 of the Uniform Act requires something more specific in the release, such as a designation by name of the other tortfeasor to be released.[7]

---

7. *See, e.g., Alaska Airlines, Inc. v. Sweat,* 568 P.2d 916, 928–929 (Alaska 1977); *Young v. State,* 455 P.2d 889, 893 (Alaska 1969); *Moore v.*

No case has been called to our attention, however, which holds that a mere reference to "any and all claims" in a release is sufficient under § 19 to release other tortfeasors.

As previously mentioned, one of the purposes of § 19 of the Uniform Act was to protect those plaintiffs who might otherwise unintentionally relinquish claims against other joint tortfeasors. A holding that the reference to "all claims" on the drafts endorsed by the plaintiffs effectuated the release of other tortfeasors would thwart this legislative purpose. We hold, therefore, that the plaintiffs' endorsement and deposit of the drafts did not release Jean Alexis.

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED, AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. APPELLEE TO PAY COSTS.*

*Missouri Pac. RR.*, 299 Ark. 232, 239–240, 773 S.W.2d 78, 81–82 (1989); *Alsup v. Firestone Tire & Rubber Co.*, 101 Ill.2d 196, 200–201, 77 Ill.Dec. 738, 741, 461 N.E.2d 361, 364 (1984); *Aid Ins. Co. v. Davis County*, 426 N.W.2d 631, 633–634 (Iowa 1988); *Spector v. K–Mart Corp.*, 99 A.D.2d 605, 605, 471 N.Y.S.2d 711, 712 (1984); *Beck v. Cianchetti*, 1 Ohio St.3d 231, 235, 439 N.E.2d 417, 420 (1982); *Bjork v. Chrysler Corp.*, 702 P.2d 146, 159–163 (Wyo.1985).