**NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, et al., Plaintiffs,**

v.

**PORTER HAYDEN COMPANY, Defendant.**

Civ. No. AMD 03–3408.

United States District Court, D. Maryland.

July 7, 2009.

---

See also 331 B.R. 652.

Timothy R. Dingilian, Brian Charles Malone, Jackson and Campbell PC, Barry J. Fleishman, Dickstein Shapiro LLP, Washington, DC, for Plaintiffs.

Robert E. Johnston, Donald Robertson McMinn, Marc S. Mayerson, Stephanie D. David, Spriggs and Hollingsworth, Michael R. Engleman, Dickstein Shapiro LLP, Washington, DC, Deborah Hunt Devan, Neuberger Quinn Gielen Rubin and Gibber PA, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

ANDRE M. DAVIS, District Judge.

In this long-running action, National Union Fire Insurance Co. of Pittsburgh, PA ("National Union") seeks a declaratory judgment that Porter Hayden Co. ("Porter Hayden"), a debtor in the bankruptcy court in this district, is not entitled to a defense or indemnity, in whole or in part as to each, for asbestos-related claims. The court has withdrawn the reference and taken jurisdiction over the action from the bankruptcy court, and has previously resolved certain issues bearing on Porter Hayden's entitlement to coverage. *See Nat'l Union Fire Ins. Co. v. Porter Hayden Co.,* 331 B.R. 652 (D.Md.2005). Now pending are cross-motions for summary judgment on issues arising from the creation of an innovative asbestos claims facility, as described below, as part of the Porter Hayden confirmed plan. The issues have been fully briefed and no hearing is necessary. For the reasons stated within, the court will grant Porter Hayden's motion and deny plaintiffs' motion.

### I.

Porter Hayden is a Maryland corporation that sold and installed industrial insulation products containing asbestos fibers from the 1920s into the 1980s. In 1973, Porter Hayden ceased all of its installation operations; however, it continued selling insulation materials and other products until 1982. In order to provide insurance coverage for its operations, Porter Hayden purchased four comprehensive general liability ("CGL") policies from National Union, which were in effect from April 1, 1984, to April 1, 1988.[1] These CGL policies provided that:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
>
> B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall

---

1. These four CGLs include Policy Nos. 1524165 from 4/1/84 to 4/1/85; 1940385 from 4/1/85 to 4/1/86; 1803346 from 4/1/86 to 4/1/87; and 5010570 from 4/1/87 to 4/1/88.

have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage.

In December 2000, Porter Hayden brought a declaratory judgment action in the Circuit Court for Baltimore City seeking coverage for tens of thousands of asbestos-related claims under two insurance policies issued by National Union covering the period from April 1, 1984, to April 1, 1986. In March 2002, while that suit was pending in state court, Porter Hayden filed for reorganization under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland. On June 30, 2006, the Bankruptcy Court confirmed Porter Hayden's Third Amended Second Modified Plan of Reorganization ("the Plan").

The Plan established the Asbestos Bodily Injury Trust ("the Trust") in order to handle asbestos-related claims against Porter Hayden. The Trust was modeled after the procedures established in *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 641 (2d Cir.1988) (using the Bankruptcy Court's "broad equitable powers" to channel asbestos-related personal injury claims against an insolvent corporation into a trust funded by the corporation's liquidated assets and authorizing injunctions for suits against an insolvent corporation). Pursuant to the Plan, asbestos claimants are enjoined from suing Porter Hayden in court; rather, they are required to submit their claims to the Trust. The Trust specified qualifications for asbestos claims, processed claims of asbestos claimants, evaluated the severity of each claim, and disbursed settlement amounts based on the severity-level of each claim. The Trust was funded by assets, including access to the proceeds from any insurance policy that covers asbestos claims. The Bankruptcy Court appointed former Porter Hayden president, T. Dennis Feeley, as trustee.

Porter Hayden has here moved for partial summary judgment for a declaration that National Union's obligation to defend Porter Hayden against policy holders' allegations of covered injury during a relevant policy period includes paying for costs incurred in handling claims presented to the Porter Hayden Asbestos Bodily Injury Trust. In its cross-motion, National Union seeks a declaration that (1) Porter Hayden has no legal obligation to pay damages arising out of asbestos bodily injury claims and, consequently, there is no coverage for such claims; (2) the "No Actions" clauses of the policies prohibit any action to enforce coverage for any claims under the Policies because Porter Hayden cannot be subjected to a final judgment for damages arising out of any asbestos-related bodily injury claims; (3) the Trust is not covered by the policies because (a) the Trust is not an insured and (b) National Union did not consent to an assignment; and (4) the Trust is not covered by the policies because there is no status of unilateral "successor in interest" to an insured under an insurance policy absent the express consent of the insurer to assign coverage.

## II.

### A.

Cross motions for summary judgment "do not automatically empower the court to dispense with the determination whether questions of material fact exist." *Luc Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt,* 700 F.2d 341, 349 (7th Cir.1983), *cert. denied,* 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion

is under consideration." *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987). The court may grant summary judgment in favor of one party or deny both motions. *See Shook v. United States,* 713 F.2d 662, 665 (11th Cir.1983).

Here, the court agrees with the parties that, fundamentally, issues of law are presented, and that no genuine disputes of *material fact* exist. *Fed.R.Civ.P.* 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The parties' cross-motions posit the same question: whether, as a matter of law, National Union's obligation to defend Porter Hayden against policy holders' allegations of covered injury during a relevant policy period includes paying for costs incurred in handling claims presented to the Trust. Porter Hayden contends that it does. National Union contends that it does not.

## B.

■ In Maryland, courts construing the terms of coverage under an insurance policy must apply the terms of the insurance contract itself. *Mitchell v. Md. Cas.,* 324 Md. 44, 595 A.2d 469, 475 (1991); *Mut. Fire, Marine, & Inland Ins. v. Vollmer,* 306 Md. 243, 508 A.2d 130, 133 (1986). Courts may construe unambiguous contracts as a matter of law. *Pac. Indem. v. Interstate Fire & Cas.,* 302 Md. 383, 488 A.2d 486, 489 (1985). Courts give the words of the insurance contract their usual, ordinary, and accepted meaning unless the parties intended to use the words in the policy in a technical sense. *Mitchell,* 595 A.2d at 475; *Cheney v. Bell Nat'l Life,* 315 Md. 761, 556 A.2d 1135, 1138 (1989). A word's ordinary definition is that which a reasonably prudent layperson would at-

tach to the word. *Pac. Indem.,* 488 A.2d at 488. Unlike other jurisdictions, Maryland does not construe an insurance policy against the insurer. *Cheney,* 556 A.2d at 1138. Rather, courts ascertain the parties' intentions from the policy as a whole. *Id.*; *Pac. Indem.,* 488 A.2d at 488–89. Only in the event of an ambiguity are courts allowed to consider extrinsic evidence as to the meaning of the policy. *Id.*

### *"Legally obligated"*

It is undisputed that the insurance policies issued to Porter Hayden are liability policies, requiring National Union to provide coverage to Porter Hayden whenever Porter Hayden is legally obligated to pay damages to third parties. The policies provide,

> The Company [National Union] will pay on behalf of the Insured [Porter Hayden] all sums which the Insured shall become *legally obligated* to pay damages because of
> a. bodily injury or
> b. property damage
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any *suit* against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient.

Porter Hayden's Mot. for Summ. J. Exh. B at Coverage I (emphasis added).

The parties dispute the definition and scope of the term "legally obligated" in light of Porter Hayden's bankruptcy reorganization. Porter Hayden argues that its bankruptcy and subsequent reorganization do not alter National Union's contractual obligation to defend pursuant to the insurance policies. National Union, on the oth-

er hand, argues that it has no legal obligation to pay damages for asbestos-related claims brought to the Trust because (1) asbestos claimants are enjoined from bringing any legal proceedings against Porter Hayden, i.e., Porter Hayden is not legally obligated to the claimants, (2) Porter Hayden's impermissible assignment of the policies to the Trust resulted in the forfeiture of all pre-existing insurance, and (3) the Trust is neither an insured under the terms of the policies nor Porter Hayden's successor in interest.

█ First, Porter Hayden is legally obligated to the asbestos claimants under Maryland law. The Maryland Court of Appeals has clearly stated:

> The term "legally liable" to pay damages depends not upon when, and if, a judicial determination is made, but, generally, upon the creation of circumstances by and/or between parties, whereby the parties, or one or the other of them, can enforce rights through legal process. Parties often become legally obligated ("liable") to pay by way of contract, *i.e.*, construction contracts, leases, insurance contracts, etc., or *by committing tortious acts*. The verdict of a jury and the judgment of a court are merely a determination that a legal obligation existed, and continues to exist. The verdict of a jury and the judgment of the court do not, of themselves, create the underlying legal obligation. The underlying legal obligation changes into judgment form— but the legal obligation pre-existed the judgment or the judgment would not have been possible. If a "legal obligation" does not exist until there is a judgment, there would never be a judgment because a judgment of necessity arises out of legal obligations, liabilities, and legal duties.

*Megonnell v. United Services Auto. Ass'n.,* 368 Md. 633, 796 A.2d 758, 765–66 (2001)

(emphasis added). Under *Megonnell,* Porter Hayden has an underlying, though contingent, legal obligation to the asbestos claimants because it committed tortuous acts. That Porter Hayden had a legal obligation to the claimants before entering bankruptcy, or in the absence of bankruptcy, satisfies the requirement of a "legal obligation" within the meaning of the policies. National Union's arguments directly contravene Maryland law. As the Court of Appeals explained, claimants need not have a judicial determination, or even file suit, against Porter Hayden for Porter Hayden to have a legal obligation to them. Porter Hayden's potential liability in tort is sufficient to create a legal obligation.

Indeed, the cases cited by National Union on this point completely undermine its own arguments. These cases held that the insured had legal obligations to pay damages notwithstanding that there were no legal proceedings against the insured. In *Bausch & Lomb Inc. et al. v. Utica Mut. Ins. Co.,* 330 Md. 758, 625 A.2d 1021, 1032 (1993), for example, the Court of Appeals held that the insured had a legal obligation to clean up environmental pollution even though (1) the insured voluntarily elected to undertake the clean-up, (2) no party, governmental or private, had commenced legal proceedings against the insured, or (3) state agents were neither "overtly adversarial" nor "coercive" regarding the clean-up. The insured's legal obligation was measured by the requirements of the law, and not whether it was subject to compulsory legal process. *Id.* Similarly, in *Megonnell,* 796 A.2d at 768, the Court of Appeals held that the insured is entitled to a defense against persons injured in automobile accidents who settle their claim with the insurer by agreement. Contrary to National Union's contention, it was not the settlement that triggered liability. Rather, it was the insured's negligence

that triggered the insured's obligation to pay damages. *Id.* ("While under a different insurance context, the situation in *Bausch & Lomb* is analogous to the case at bar in that [the insured] would have ultimately faced the task of having to pay the [injured third party] for his negligence") (internal quote omitted).

The policies at issue do not plainly exclude coverage for Porter Hayden's bona fide liabilities where claimants are precluded from obtaining a judgment against Porter Hayden because of the Porter Hayden's insolvency. The fact that claimants are enjoined from bringing suit against Porter Hayden does not negate Porter Hayden's legal obligation to the asbestos claimants.

█ Second, the bankruptcy court's discharge order and supplemental injunction do not eliminate Porter Hayden or National Union's legal obligation to asbestos claimants. Maryland law is clear: "Each liability insurance policy issued in the State shall provide that: (1) the bankruptcy or insolvency of the insured does not release the insurer from liability." Md. Code Ann., Ins. § 19–102(b)(1).

█ A discharge order from a bankruptcy court releases a debtor from *personal* liability inasmuch as the discharge voids any past or future judgments and enjoins creditors from attempting to collect from the debtor. *Tenn. Student Assistance Corp. v. Hood,* 541 U.S. 440, 447, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004) (*citing* 3 W. Norton, Bankruptcy Law and Practice 2d § 48:1, p 48–3 (1998)). Discharge, however, "does not affect the liability of any other entity on, or the property of any other entity for, such debt." *11 U.S.C. § 524(e).* In fact, numerous courts have held that a discharge order and supplemental injunction do not (1) affect the obligations of liability insurers to third parties, (2) prevent claimants from pro-

ceeding against a discharged debtor, or (3) preclude claimants from recovering against the discharged debtor's insurer. *In re Edgeworth,* 993 F.2d 51, 54 (5th Cir.1993) (collecting cases); *Magalski v. Md. Cas. Co.,* 21 Md.App. 136, 318 A.2d 843, 848 (1974) ("[T]he insolvency or financial responsibility of the insured does not release the insurer from liability to third parties."). These courts have reasoned that "it makes no sense to allow an insurer to escape coverage for injuries caused by its insured merely because the insured receives a bankruptcy discharge. The 'fresh-start' policy is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured." *Id.* (internal quotations omitted).

Here, Porter Hayden's legal obligations to asbestos claimants survive post-discharge even though those claimants are barred from recovering directly from Porter Hayden. More importantly, 11 U.S.C. § 524 and cases from varying jurisdictions make clear that asbestos claimants may undertake proceedings to establish the extent of Porter Hayden's liability and collect from Porter Hayden's liability insurer, National Union. Porter Hayden's bankruptcy discharge does not release, i.e., surrender a cause of action against, National Union from liability to the asbestos claimants. *See Cupidon v. Alexis,* 335 Md. 230, 643 A.2d 385, 387 (1994). Porter Hayden's legal obligation to the claimants do not disappear simply because the claimants are barred from bringing suit against Porter Hayden. Moreover, National Union's own policies state that "[b]ankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder." Porter Hayden's Mot. for Summ. J. Exhs. A & B at Conditions ¶ 5.

 Third, the Plan and the subsequent injunction do not have the effect of transferring or assigning Porter Hayden's legal obligations to the Trust; thus, National Union is not absolved of its contractual duty to defend Porter Hayden. The Plan gives parties other than Porter Hayden access to insurance coverage:

> Upon confirmation and consummation of this Plan, the Trust and/or any transferee or assignee of any Asbestos Insurance Policy or Asbestos Insurance Rights shall have access, to the greatest extent permitted by applicable non-bankruptcy law, to insurance coverage and/or insurance payments related to Asbestos Insurance Policies (subject to any applicable policy limits) to defend, resolve, and satisfy the Asbestos Bodily Injury Claims channeled to the trust in the same manner as such insurance coverage and/or insurance payments were available to the Debtor to respond to asbestos related claims prior to confirmation of this Plan, subject to the assertion of any Asbestos Insurance Coverage Defenses.

National Union's Mot. for Partial Summ. J. Exh. D, p. 24. Each of the insurance policies between National Union and Porter Hayden, however, provides that "[a]ssignment of interest under this policy shall not bind the company until its consent is endorsed hereon." National Union's Mot. for Partial Summ. J. Exh. A(1)-(2). Anti-assignment clauses in insurance policies (such as these) are valid under Maryland law. *See Michaelson v. Sokolove*, 169 Md. 529, 182 A. 458, 459–60 (1936); *Clay v. Gov't Employees Ins. Co.*, 356 Md. 257, 739 A.2d 5, 7 (1998).

The plain language of the Plan, however, does not indicate that Porter Hayden "assigned" any "interest" under the policies to the Trust. The words "assign" or "assignment" do not appear in the Plan. Nevertheless, National Union contends that the Plan was "intentionally devised" to "disguise" an assignment. National Union's Mem. in Support of Mot. for Partial Summ. J. at 16–17. This contention is unavailing. Porter Hayden did not assign the policies to the Trust. Rather, Porter Hayden effectuated a delegation to the Trust. *See* E. Allan Farnsworth, Contracts § 11.10 (2d. ed. 1990) (Defining "delegation" as "the act by which one owing a duty . . . manifests an intention to confer upon another person to perform that duty"). As a result of the bankruptcy reorganization, Porter Hayden was able to delegate to the Trust the management of the asbestos claims resulting from its breach of duties of care to potential claimants. As previously stated, Porter Hayden's foray into bankruptcy did not negate its legal obligation to the asbestos claimants. Porter Hayden retained that legal obligation post-discharge. During bankruptcy proceedings, Porter Hayden established the Trust to assess and settle the extent of Porter Hayden liability with respect to each claimant. Porter Hayden is the Trust's settlor. In other words, Porter Hayden had a duty to the claimants and it established the Trust to perform those duties.

The Plan and Trust Agreement elucidate the nature of the delegation. The Trust is funded by Porter Hayden's assets, including the proceeds from the insurance policies covering the asbestos claims. The Trust Agreement specifies how the Trust is to discharge Porter Hayden's duties. For example, the Trust Agreement specifies how claims must be evaluated and the process by which a claims adjustor would determine the value of the payment for each claimant. Furthermore, there is nothing in the policies prohibiting such a delegation.

(Even if Porter Hayden had assigned the policies to the Trust without National Union's consent, the purported assignment would be invalid, but the policies would not be forfeited, as National Union suggests. *See Snyder v. Chester County Mut. Ins. Co.,* 264 F.Supp.2d 332, 340 (D.Md.2003) (Maryland disfavors forfeiture of insurance coverage); *Bd. of Ed. v. St. Paul Fire & Marine Ins. Co.,* 420 F.Supp. 491, 493 (D.Md.1975) (same); *accord Clay,* 739 A.2d at 8 (Holding an insurance policy's anti-assignment clause enforceable but not forfeiting coverage as a consequence of the attempted assignment)).

*"Suit . . . seeking damages"*

■ The parties also dispute the definition of the term "suit" in the coverage section of the policies. The policies require National Union to defend Porter Hayden against any "suit . . . seeking damages." Porter Hayden contends that the term "suit" is not limited to complaints filed in a court of law; rather, "suit" encompasses claims filed with the Trust. National Union, on the other hand, contends that claims filed with the Trust are not "suits" filed against Porter Hayden.

■ The term "suit" is not defined in the Definitions section of the policies. And, the policies do not expressly indicate that the parties wished to ascribe a special or technical meaning to the term "suit." I therefore determine the meaning that a reasonably prudent layperson would attach to the term. Random House defines "suit" as "the act, the process, or an instance of suing in a court of law; legal prosecution; lawsuit." *Random House Unabridged Dictionary* 1902 (2d. Ed.1993). Webster's definition is, "the attempt to gain an end by legal process: prosecution of right before any tribunal [. . .] an action or process in a court for the recovery of a right or claim: a legal application to a court of justice." *Webster's Third New Interna-*

*tional Dictionary of the English Language* 2286 (1986). Merriam Webster's Collegiate Dictionary defines "suit" as "a recourse or appeal to a feudal superior for justice or redress [. . .] an action or process in a court for the recovery of a right or claim." *Merriam Webster's Collegiate Dictionary* 1178 (10th Ed.1997).

These definitions have differing requirements. Webster's first definition does not refer to a court proceeding. Webster's second definition refers to a tribunal, but not necessarily a court of law. Indeed, there are many different kinds of tribunals, those formal, informal, and everything in between. Some of the other definitions listed above refer to court proceedings. I image, however, proceedings such as settlements, alternative dispute resolution, administrative determinations, etc., that may be construed as court proceedings, but nevertheless fall outside the contemplation of the dictionary definitions listed above. With these issues in mind, I conclude that the term "suit" is sufficiently ambiguous such that a typical layperson might apply the term to legal proceedings other than one initiated by the filing of a complaint against a defendant. I will therefore construe the policy language liberally in favor of the insured. *See Megonnell v. U.S. Auto. Ass'n,* 368 Md. 633, 796 A.2d 758, 772 (2002) ("[I]f an insurance policy is ambiguous, it will be construed liberally in favor of the insured and against the insurer as drafter.").

The Maryland Court of Appeals has not ruled on the definition or scope of the term "suit" in an insurance policy; however, jurisdictions that have faced this issue have wisely declined to adopt a narrow, legalistic definition of the term, opting instead for a more holistic analysis. The U.S. Court of Appeals for the District of Columbia has stated that "it is the charac-

ter of the proceedings in which the claim for damages against the insured is made ... that determines whether there is a 'suit' against the insured." *Continental Cas. Co. v. Cole*, 809 F.2d 891, 898 (D.C.Cir.1987) ("[A]n insured who is being 'proceeded against,' albeit in an unorthodox fashion, is no less entitled to a defense than his insured contemporaries who are legally attacked in a more conventional manner").

In *Michigan Millers Mut. Ins. Co. v. Bronson Plating Co.*, 445 Mich. 558, 519 N.W.2d 864, 869 (1994) (overruled on other grounds), the Michigan Supreme Court held that the term "suit" is "capable of application to legal proceedings initiated in other than a traditional court setting" and that "suit" "means, and should be construed as intended to include, the mode or manner authorized and adopted by law to redress civil injuries." The court rejected the argument that the Environmental Protection Agency's "potentially responsible party" (PRP) letter, which required voluntary participation in the cleanup of hazardous waste, did not constitute a "suit" under the terms of the insurance policy. *Id.* The language at issue in *Bronson Plating* is identical to the boilerplate policy language at issue in the instant case. *See id.* at 867 n. 1.

Additionally, in *Alderman v. Hanover Ins. Group*, 169 Conn. 603, 363 A.2d 1102, 1107 (1975), the Connecticut Supreme Court held that the insurer breached its duty to defend when it failed to defend the insured after the insured had denied coverage but before the claimant filed suit. The court held that the insured was entitled to recover from the insurer the investigation and legal costs associated with the insured's settlement with the claimant. *Id.*

Cases from various jurisdictions also establish that defense coverage for "suits"

extend beyond traditional adjudication in a court of law. *See e.g., Sch. Dist. No. 1 v. Mission Ins. Co.*, 58 Or.App. 692, 650 P.2d 929, 937 (1982) ("Suits" include administrative proceedings and do not have to take place in court); *Madawick Contracting Co. v. Travelers Ins. Co.*, 307 N.Y. 111, 120 N.E.2d 520, 523–24 (N.Y.1954) ("Suit" is a broad term that encompasses arbitration proceedings).

The Bankruptcy Court for the Southern District of Ohio has also adopted a broad view of an insurer's duty to defend. In *In re Eagle–Picher Indus., Inc.*, 134 B.R. 248, 254 (1991), the court held that an insurer must reimburse an insolvent manufacturer of asbestos-containing products for costs incurred by the Asbestos Claims Facility in administering, defending, and settling asbestos-related claims. In fact, the court "embrace[d] the reasonable steps taken by debtors in retaining the services of [a clearing house] to dispose of claims." *Id.* The facts of *Eagle–Picher* are analogous enough to the present case that I find it highly persuasive. While the claims against Eagle–Pitcher were not channeled to a Trust, those claims stemmed from Eagle–Pitcher's tort liabilities, just as the claimants demand damages from Porter Hayden for its own tort liabilities. Both Eagle–Pitcher and Porter Hayden are named insureds under their respective policies. Like Eagle–Pitcher, Porter Hayden has retained a clearinghouse (Verus) that processes and investigates the claims brought to the Trust by the asbestos claimants. Porter Hayden should not be penalized (to say nothing of the claimants) for channeling all of the claims into one body, which is the most efficient way of handling claims that barred from adjudication in court pursuant to a customary civil action.

National Union points to two cases in which the Maryland Court of Special Ap-

peals defined the term "suit:" *Md. Sec. Comm'r v. U.S. Sec. Corp.*, 122 Md.App. 574, 716 A.2d 290 (1998) and *Nelson v. Real Estate Comm'n*, 35 Md.App. 334, 370 A.2d 608 (1977). These cases, however, are wholly distinguishable from the instant case. In these cases, the Court of Special Appeals defined the term "suit" in a different context; namely, that of statutes of limitations. These cases are inapposite because they do not apply the rules of contract interpretation.

I decline National Union's invitation to construe "suit" narrowly. A formal complaint filed in court is not the only scenario in which a claimant brings a "suit." Indeed, the claimants here are barred from filing such complaints. I am persuaded that the term "suit" should be read broadly. Specifically, "suit" encompasses the claims submitted to the Trust because the claims submitted to the Trust seek damages for Porter Hayden's liability. The claimants and the Trust have competing, even adversarial, interests inasmuch as the claimants seek maximum damages and the Trust, which has a limited supply of funds, seeks to minimize those damages.

The equities also support a broad reading of the term "suit." The parties could not have foreseen the unfolding events at the time they contracted with one another. Eight years had passed from when the parties had initially contracted for insurance coverage to the time in which Porter Hayden filed for Chapter 11 reorganization and a trust to which claims are submitted was established. Apparently, the Porter Hayden Trust is only the second of its kind to be established in the United States. There is no compelling reason evident here why National Union should receive a windfall from Porter Hayden's bankruptcy discharge and injunction. *See In re Wallace & Gale Co.*, 385 F.3d 820, 833 (4th Cir.2004).

*No Action Clause*

 The policies contain "No action" clauses, which, according to National Union, preclude coverage:

> No action shall lie against the [National Union] unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, *nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and the company.*
>
> Any person or organization of the legal representative thereof *who has secured such judgment or written agreement* shall thereafter be entitled to recover under this policy *to the extent of the insurance afforded by this policy.* No person or organization shall have the right under this policy to join the company as a party to any action against the insured to determine the insured's liability, nor shall the company be impleaded by the insured or his legal representative. *Bankruptcy or insolvency of the insured's estate shall not relieve the company of any of its obligation hereafter.*

National Union's Mot. for Partial Summ. J. Exh. A(1) at ¶ 5 (emphasis added).

According to National Union, the "No action" clauses require either (1) a judgment against Porter Hayden after trial or (2) a written agreement between the claimant, Porter Hayden, and National Union, in order for an action to lie against National Union. Both parties acknowledge that both of these scenarios are legal impossibilities because of Porter Hayden's bankruptcy discharge and subsequent injunction.

I reject National Union's analysis of the "No action" clause. A claimant need not

have obtained a judicial judgment against Porter Hayden as a condition precedent to an action by Porter Hayden against National Union. The Supreme Court has rejected this exact argument over a century ago. In *St. Louis Dressed Beef & Provision Co. v. Md. Cas. Co.*, 201 U.S. 173, 182, 26 S.Ct. 400, 50 L.Ed. 712 (1906), the Court held that an insured's settlement with a tort plaintiff (i.e., a claimant) in advance of a court's entry of judgment did not foreclose the insured's entitlement to a defense from the insurer even though the settlement itself breached the insurance agreement. The court reasoned that "a sum paid in the prudent settlement of a suit is paid under the compulsion of the suit as truly as if it were paid upon execution." *Id.*

National Union cites *Phillips Way, Inc. v. Am. Equity Ins. Co.*, 143 Md.App. 515, 795 A.2d 216, 220–221 (2002), for the proposition that an insurer is not required to defend where the insured settles a claim without the insurer's consent and later seeks to enforce the policy. *Phillips Way* is not this expansive. Phillips Way merely held that an insurer is not required to defend where the insured fails to meet a condition precedent, *i.e.*, filing a proof of loss within a specific amount of time, outlined in the insurance policy. *Id.* at 221. This holding is little other than black letter contract law. *Phillips Way* did not address instances in which conditions set in insurance policies are foreclosed by a judicial action, namely, an order enjoining claimants from bringing suit against the insured, requiring the insurer to defend in court.

In *United States Fidelity & Guar. Co. v. Nat'l Paving & Contracting Co.*, 228 Md. 40, 178 A.2d 872, 875–76 (1962), the Maryland Court of Appeals held that a no-action clause did not bar coverage and a defense although the insured voluntarily settled with a tort claimant, the insurer chose to not participate in the settlement negotiations, and the insured's potential liability was within the terms of the policy. The court stated that the insurer's refusal to defend constitutes waiver of restrictive provisions, including no-action clauses. *Id.* Using this same reasoning, Judge Garbis has held that a no-action clause is not a bar to a declaratory judgment action between the insurer and the insured after the insurer has denied coverage. *Cardin v. Pac. Employers Ins. Co.*, 745 F.Supp. 330, 333–34 (D.Md.1990) (allowing suit to proceed but granting summary judgment to the insurer because the statutes of limitations had expired).

Here, the "No action" clause does not bar Porter Hayden from bringing suit against National Union. Porter Hayden is entitled to the same defense to which it was entitled pre-bankruptcy. National Union had sufficient notice that claimants were seeking damages from Porter Hayden. National Union was an interested party in Porter Hayden's Chapter 11 proceedings. Porter Hayden provides National Union with notice of all claims submitted to the Trust. Porter Hayden has also asked National Union to participate in the defense and settlement of these claims. National Union, however, has refused to participate. Of course Porter Hayden cannot obtain a written agreement between the claimant, Porter Hayden, and National Union. National Union has determined that it refuses to enter into such an agreement. National Union cannot now invoke the "No actions" clause as a bar to Porter Hayden's suit.

Moreover, the policies specifically state that "[b]ankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder." Porter Hayden's Mot. for Summ. J. Exhs. A & B at Condi-

tions ¶ 5. It would be counter-intuitive to now hold that Porter Hayden's bankruptcy discharge and injunction nullifies this provision.

Furthermore, if National Union's arguments were to prevail, companies such as Porter Hayden would have to choose between (a) seeking Chapter 11 bankruptcy protections or (b) keeping insurance coverage. Forcing insolvent companies to make this choice is, indisputably, against public policy.

### III.

For the reasons set forth, National Union's motion for partial summary judgment shall be denied; Porter Hayden's motion for partial summary judgment shall be granted. An Order follows.